IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH SESSION, 1996

FILED

July 23, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9509-CC-00308 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | WARREN COUNTY |
| VS. | ) | |
| | ) | HON. CHARLES HASTON |
| ANGELA GRISSOM, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal-Sentencing) |


FOR THE APPELLANT:

MICHAEL D. GALLIGAN
Galligan & Newman
308 West Main Street
McMinnville, TN 37110

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

MARY ANNE QUEEN
Legal Assistant

CHRISTINA S. SHEVELIER
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

BILL LOCKE
District Attorney General

ROBERT W. BOYD
Assistant District Attorney
Professional Building
McMinnville, TN 37110

OPINION FILED _____

AFFIRMED AS MODIFIED

JERRY L. SMITH, JUDGE

# OPINION

Appellant Angela Grissom entered a plea of guilty to one count of theft of property valued in excess of $10,000 in violation of Tennessee Code Annotated Section 39-14-103 (1991). See also id. § 39-14-105(4). Following a sentencing hearing on March 24, 1994, the trial judge sentenced Appellant to the maximum sentence of six years in the Department of Correction. However, soon thereafter, by order filed May 26, 1995, the trial judge placed Appellant on Community Corrections with the requirement that she observe a sentencing arrangement involving time in the county jail and house arrest and that she repay the victim corporation $29,778.37 and pay $1000 into the Economic Crime Fund. On appeal, Appellant asserts that she is presumed to be an appropriate candidate for a non-incarcerative sentence and that, under the particular circumstances of her case, the trial judge should have granted her full probation.

We agree with Appellant and modify her sentence to the minimum sentence of three years, with all time suspended. The Appellant is placed on supervised probation for a period of six years. As a condition of probation, the Appellant is ordered to pay restitution in the amount of $29,778.37 over the six year probationary period. See Tenn. Code Ann. § 40-35-303(c).

**FACTS**

Appellant readily admits that she embezzled over $29,000 from her former employer Calsonic Yorozu Corporation (CYC). At the March 24, 1995 sentencing hearing, two employees of CYC testified that Appellant had accepted responsibility for what she had done and that she had been cooperative following her arrest. She had met with one of these employees in an attempt to explain how she accomplished this

crime and how CYC might recover some of its losses. Both seemed amenable to the idea of Appellant serving some form of alternative sentence though both ultimately expressed their deference to the trial court on this matter. Another witness testified that, though she was not at all implicated in this crime, she had lost her job as a bank teller because of Appellant's acts. She stated that this event was very devastating and emotional for her as well as her family. In the midst of the testimony at the sentencing hearing, the judge stated that "when you steal, you have got to pay in some fashion, and time is going to be necessary, I don't know whether it is going to be full time or part time or whatever."

At the close of the hearing, the judge, re-reading the pre-sentence report,[1] stated that Appellant was the mother of two small children whom she cared for at home and for whom separation from their mother would be traumatic. As he read, he also noted that Appellant had done some public service work in the public school system taping books for the blind. The judge then heard the State's brief arguments on enhancing Appellant's sentence due to the amount of money involved in the theft and Appellant's abuse of a position of private trust. However, it is unclear which of these factors the trial judge found to be present and actually applied. He merely made a conclusory statement that Appellant was sentenced to six (6) years in the State penitentiary.

Two weeks later, a hearing was held on Appellant's motion for alternative sentencing. There was no new evidence presented and the majority of the hearing was devoted to a discussion about how to structure Appellant's repayment of the money that she owed to CYC. Soon thereafter on May 1, 1995, a final hearing was held in which

---

[1] A plan of supervision was included in the pre-sentence report which proposed the following conditions should the court decide to grant Appellant probation: (1) Appellant should make restitution in the amount approved by the court; (2) Appellant shall maintain employment; (3) Appellant shall perform 100 hours of public service work.

the court stated as its purpose the final imposition of a sentence. The court stated that, as for mitigating factors, it considered Appellant's attitude, that she had, in no way, blamed the victim corporation for her actions, that she was not vindictive, and that she was willing to begin serving her sentence immediately. Also, the court considered the fact that Appellant was a wife and the mother of very young children. He noted that she had voluntarily, without direction from the court, assisted CYC in determining how this crime was committed.

The court stated that it must consider certain enhancement factors. It noted the nature of this crime--that it was committed over an extended period of time. The trial judge also noted "the prevalence of such a crime in this community. It seem[ed] to [the trial judge that there had been] several of these over the past few years, and [the court] must be vigilant in the message [it] send[s] to the community." The court also considered the great amount of money that was lost by the victim. Finally, the court stated that this crime was committed by a person in a position of extreme trust.

In light of all of these factors, the court entered a supplemental sentencing order which was in effect as of the preceding April 1. The order contemplated that Appellant would serve the entire month of April in the Warren County jail.[2] For the following ten months, the trial judge fashioned a sentence which consisted of alternating house arrest and day-time service in the local jail.[3] Appellant would not be required to repay the money she owed CYC until after the first year, at which time she would begin

---

[2]      It seems that Appellant had, at the time of this order, already served the entire month of April 1995 in the Warren County jail.

[3]      During the months of May, July, September, and November of 1995 and January of 1996, Appellant would remain under strict house arrest. In the alternating months of June, August, October, and December of 1995, she would serve time at the jail from 9:00 a.m. to 6:00 p.m. from Monday to Saturday every week and be under house arrest on Sundays. In February of 1996, Appellant would spend from 9:00 a.m. to 3:00 p.m. on Mondays through Saturdays in the jail with house arrest on Sundays.

payments of restitution as well as $1000 to the Economic Crime Fund. The court went on to recommend that some form of reduced house arrest would be appropriate for the second year of the sentence since Appellant would have to start making restitution payments to CYC by this time. In considering the last part of Appellant's sentence, the trial judge stated, "[f]or the third and subsequent years . . . [a]fter she has served community corrections, she would be placed on probation."

When an appeal challenges the length, range, or manner of service of a sentence, this Court conducts a de novo review with a presumption that the determination of the trial court was correct. Tenn. Code Ann. § 40-35-401(d) (1990). However, the presumption of correctness only applies when the record demonstrates that the trial court properly considered the relevant sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this case, while the trial judge did briefly mention enhancement and mitigating factors before imposing the six year sentence, he failed to state upon which of these he was relying. See State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). With regard to the manner of service of the sentence, the court failed to give Appellant the benefit of the presumption that she is entitled to a non-incarcerative sentence. Given the state of this record, we are compelled to find that the trial court's sentencing decision does not enjoy the benefit of the presumption that it is correct. Our review will therefore be de novo upon the record.

## LENGTH OF SENTENCE

We turn first to the length of Appellant's sentence. As stated above, the trial judge initially sentenced Appellant to six years in the Department of Correction. While the judge later modified the manner of service, the length remained at six years. In the absence of enhancement and mitigating factors, the presumptive length of sentence

for a Class B, C, D, and E felony is the minimum sentence in the statutory range. Tenn. Code Ann. § 40-35-210(c) (Supp. 1995). Appellant was convicted of theft of property in excess of $10,000, a Class C felony. See id. § 39-14-105(4) (1991). As a Range I standard offender, she is eligible for a sentence of three to six years, see id. § 40-35-112(a)(3) (1990), with three years the presumptively appropriate length.

As noted above, prior to the imposition of a six-year sentence, the trial court merely listened to the State's proffer of two enhancement factors without articulating whether it found either to be present. We reject the application of the first of these enhancement factors--that the amount of money taken from the victim was particularly great. See id. § 40-35-114(6) (Supp. 1995). Our Court has held that since the punishment for theft is enhanced based upon the amount taken by the accused, use of this enhancement factor constitutes double enhancement in violation of the statute.[4] State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993) (citing State v. Tate, No. 03C01-9110-CR-00327, 1992 WL 281928 (Tenn. Crim. App. Oct. 15, 1992), perm. app. denied, (Tenn. Mar 8, 1993)). On the other hand, we agree with the application of the second factor urged by the State to enhance Appellant's sentence due to her abuse of a position of private trust. Appellant was an employee of the victim company, a position of trust which enabled her to commit these crimes.[5]

---

[4]   This Court has held this enhancement factor applicable in a case where the theft offense involved $52,000--an amount of money approaching the $60,000 amount necessary to put the offense into the next grade of theft and where the "losses suffered by the [victim business] owners from the defendant's criminal conduct were particularly damaging." State v. Frank, No. 03C01-9209-CR-00303, 1993 WL 539401, at *4 (Tenn. Crim. App. Dec. 22, 1993). However, in this case, the amount of money involved was not near $60,000 and there is no evidence that the victim corporation suffered damages approaching those in Frank.

[5]   This Court is aware of State v. Bilbrey, 816 S.W.2d 71 (Tenn. Crim. App. 1991), which prohibited the use of this factor to enhance a sentence for the crime of fraudulent breach of trust because the violation of trust was inherent in this crime. While Bilbrey would lend support to a similar argument for the former crime of embezzlement, the legislature has consolidated all of the theft offenses into one single offense, Tennessee

When the trial court modified Appellant's sentence at a subsequent hearing, it stated that it was relying upon two additional factors: that this type of crime was prevalent in the community and that this particular crime was committed over an extended period of time. Although it is clear that the trial judge had already enhanced Appellant's sentence when it articulated these factors as "enhancement factors," we note that neither of these are statutory enhancement factors and cannot be used to enhance the length of a defendant's sentence. State v. Strickland, 885 S.W.2d 85, 89 (Tenn. Crim. App. 1993); see Tenn. Code Ann. § 40-35-114 (Supp. 1995).

The record reflects a number of mitigating factors not the least significant of which was Appellant's attitude of remorse, responsibility, and willingness to aid the victim in any way that she could. Appellant had already spent time with employees of the victim corporation in an attempt diminish the harmful effects of her misconduct. See Tenn. Code Ann. § 40-35-113(10) (1990). She had also already spent community service hours in the public school system. As Appellant noted in a list of mitigating factors filed with the lower court, her conduct did not cause or threaten serious bodily injury. See id. § 40-35-113(1). And finally, Appellant has serious family obligations as the mother of very young children.

---

Code Annotated Section 39-14-101 (1991), defining theft as knowingly obtaining or exercising control over property without the owner's effective consent, with the intent to deprive the owner of the property. Id. § 39-14-103. We therefore feel that any problem of double enhancement has been eliminated.
We distinguish also State v. McKinney, No. 01C01-9307-CR-00234, 1995 WL 108257 (Tenn. Crim. App. Mar. 10, 1995), where we found this enhancement factor inapplicable to a defendant convicted under the current theft statute of stealing from his employer. The Court asserted that "breach of trust is inherent in the charge of theft as charged in this case" and then quoted the language of the indictment which used the words "through fraud and deceit." Id. at *2 (emphasis added). In the case at bar, the indictment merely parrots the words of the theft statute.

Where, as here, both enhancement and mitigating factors apply, the trial court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Id. § 40-35-210(e) (Supp. 1995). In this case, the one applicable enhancement factor warrants the enhancement of Appellant's sentence from the minimum three years to four years. However, in our opinion the abundance of mitigating evidence necessitates that the sentence be reduced back down to the minimum. In conclusion, three years is the proper length for Appellant's sentence.

## MANNER OF SERVICE

Regarding the manner of service, the Tennessee Criminal Sentencing Reform Act of 1989 recognizes the limited capacity of state prisons and mandates that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts of rehabilitation shall be given first priority regarding sentencing involving incarceration." Id. § 40-35-102(5). A defendant who does not qualify as such and who is an especially mitigated or standard offender of a Class C, D, or E felony is "presumed to be a favorable candidate for sentencing options in the absence of evidence to the contrary." Id. § 40-35-102(6); Ashby, 823 S.W.2d at 169. This simply means that the trial judge must presume such a defendant to be a favorable candidate for sentencing which does not involve incarceration. State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993). However, this presumption is rebuttable and incarceration may be ordered if the court is presented with evidence of the following:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (1990); see also Ashby, 823 S.W.2d at 169. In determining the appropriate sentencing alternative, a court may also look to evidence or information offered by the parties on the statutory enhancement and mitigating factors. Tenn. Code Ann. § 40-35-210(b)(5) (Supp. 1995 ); see also Id. § 40-35-113 to 114 (1990 & Supp. 1995). Lastly, a court should take into account the potential or lack of potential for a defendant's rehabilitation or treatment when considering the appropriate sentencing alternative. Id. § 40-35-103(5) (1990).

Here, Appellant does not fall within the parameters of Tennessee Code Annotated Section 40-35-102(5) and she is a standard offender convicted of a Class C felony. She is therefore presumed to be a favorable candidate for alternative non-incarcerative sentencing . However, in this record, there is no indication that the trial court gave Appellant the benefit of this presumption. Therefore, it is the duty of this Court in light of the presumption, to review the evidence to determine if the presumption has been rebutted. We begin our analysis by noting that, as Appellant is a first-time offender, confinement is not necessary because less restrictive measures have been applied unsuccessfully to her nor is it necessary due to a long history of criminal conduct. See Id. § 40-35-103(1)(A), (C).

The remaining consideration found in Section 40-35-103(1)(B) requires an examination of the seriousness of the offense and the suitability of confinement as a deterrence to others. Concerning the latter, this Court has stated that "[b]efore a trial court can deny alternative sentencing on the ground of deterrence, there must be some evidence contained in the record that the sentence imposed will have a deterrent effect

within the jurisdiction." State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995); see also Ashby, 823 S.W.2d at 170 (finding evidence insufficient to support deterrence as sole reason for denying alternative sentencing). At the hearing on alternative sentencing, the trial judge stated that it seemed to him that there had been several of these type crimes in the recent past. However, not only did the State fail to present evidence to support the court's notion, it never even made such an argument. Our Supreme Court has held that "deterrence cannot be conclusory only but must be supported by proof." Ashby, 823 S.W.2d at 170. As no proof was presented here, this consideration cannot be the basis for a denial of alternative sentencing.

Regarding the seriousness of the offense, this Court has held that "[i]n order to deny an alternative sentence based on the seriousness of the offense, 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." Bingham, 910 S.W.2d at 454 (citing State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). We are unable to conclude that, although serious, the circumstances of this offense meet this standard.

Moreover, there are many factors that weigh in favor of alternative sentencing. The trial court noted many of these factors during the different hearings, and we have already referred to them as mitigating factors in our discussion of the length of Appellant's sentence. We restate a few for emphasis: Appellant has been candid with the court and the victim corporation regarding her crime. She has exhibited an attitude of remorse and responsibility. See State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App.1994) ("a defendant's credibility and willingness to accept responsibility for the offense are circumstances relevant to determining his rehabilitation potential"); see also

Tenn. Code Ann. § 40-35-103(5). As noted herein, Appellant, as the mother of small children, is needed in the home.

In light of the fact that the presumption for alternative sentencing is not rebutted by the statutory considerations found in Tennessee Code Annotated Section 40-35-103(1) and that other factors weigh strongly in favor of a sentence other than confinement, we conclude that an alternative sentence must be imposed. The sole remaining question is which type of alternative sentence is appropriate in this case.

In response to that question, Appellant asserts that she should be granted full probation. However, the determination of whether Appellant is entitled to an alternative sentence and whether Appellant is entitled to full probation are different inquiries, requiring different burdens of proof. Bingham, 910 S.W.2d at 455. Even though presumed a favorable candidate for alternative sentencing, Appellant bears the burden of establishing suitability for full probation. Tenn. Code Ann. § 40 -35-303(b) (Supp. 1995); Bingham, 910 S.W.2d at 455. To meet this burden, Appellant must demonstrate that probation will "subserve the ends of justice and the best interest of both the public and the defendant." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990). When determining suitability for probation, the sentencing court considers the following factors: (1) the nature and circumstances of the criminal conduct involved; (2) the defendant's potential or lack of potential for rehabilitation, including the risk that, during the period of probation, the defendant will commit another crime; (3) whether a sentence of full probation would unduly depreciate the seriousness of the offense; and (4) whether a sentence other than full probation would provide an effective deterrent to others likely to commit similar crimes. Tenn. Code Ann. §§ 40-35-210(b)(4), -103(5), -103(1)(B) (1990); Bingham, 910 S.W.2d at 456 (citations omitted).

Our conclusion in this regard is counselled by the recent Tennessee Supreme Court case of State v. Davis, 940 S.W.2d 558 (Tenn. 1997) which holds that a sentence for crimes committed prior to July 1, 1996, may include restitution to the victims only if it is a sentence of probation. Prior to July 1, 1996, the Tennessee General Assembly had not authorized restitution incident to a sentence of incarceration. Id. at 561 n.6. We thoroughly agree with the trial judge that restitution is appropriate in this case, but we may order it only if Appellant is placed on probation. Moreover, the nature and circumstances of Appellant's conduct do not suggest that she needs more supervision than that inherent to probation, nor do they suggest that she is the type of criminal prone to future criminal activity. We acknowledge the serious nature of this offense but do not think the seriousness of it is depreciated by a three-year suspended sentence coupled with an order that Appellant repay the money she owes her former employer during a six year probationary period. Lastly, after being involved in criminal proceedings for over four years,[6] Appellant now faces six years of hard work in order to repay the victim. We think this sentence will provide an effective deterrent to others likely to commit similar crimes.

It is apparent from the record that the trial court gave much consideration to the specific schedule for Appellant's payments of restitution. We therefore adopt this plan ordering Appellant to make restitution in the amount of $29,778.37 to CYC as well as to make a contribution in the amount of $1000 to the Economic Crime Fund and to pay court costs in the amount of $331.25. Beginning the first full month after the release of this opinion, Appellant shall pay the sum of $400 per month through the clerk of the Warren County Circuit Court and shall continue to make such payments for 24 consecutive months. For the subsequent months, Appellant shall pay $600 per month until such time as complete payment of restitution, economic fund, and court costs have

---

[6] The record reflects that Appellant was indicted in October of 1993.

been paid.[7]  We note that this order of restitution is subject to Tennessee Code Annotated Section 40-35-304(f) (1990), which allows the victim or the district attorney general at any time to petition the court to adjust or otherwise waive payment of performance of the restitution ordered or any unpaid portion thereof.

In summary, we modify Appellant's sentence to a three-year term, all of which is suspended.  Appellant will be on probation for a period of six years.  We affirm the trial court's decision ordering Appellant to make restitution in the amount of $29,778.37 and, in addition, to pay $1000 into an Economic Crime Fund as well as the court costs in the amount of $331.35.  We also impose upon Appellant the duty to perform 100 hours of public service work as was recommended in her pre-sentence report.  See supra note 1.

Accordingly the judgment of the trial court is affirmed as modified

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE

_____
WILLIAM S. RUSSELL, SPECIAL JUDGE

---

[7] Tennessee Code Annotated Section 40-35-304(c), provides that a payment schedule may extend up until, but not beyond, the statutory maximum term of probation supervision that could have been imposed for the offense--in this case, six years.