**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**OCTOBER SESSION, 1998**

FILED

February 10, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9709-CC-00413** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **SEVIER COUNTY** |
| **VS.** | ) | |
| | ) | **HON. REX HENRY OGLE** |
| **BRENDA KAY KEEFER,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Sentencing) |

**ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF SEVIER COUNTY**

<u>FOR THE APPELLANT</u>:

DENNIS C. CAMPBELL
Assistant Public Defender
140A Court Avenue
Sevierville, TN 37862

<u>FOR THE APPELLEE</u>:

JOHN KNOX WALKUP
Attorney General and Reporter

ELLEN H. POLLACK
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

AL SCHMUTZER, JR.
District Attorney General

STEVE HAWKINS
Assistant District Attorney General
Sevierville, TN 37682

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

This is an appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Defendant, Brenda Kay Keefer, pleaded guilty to one count of Class B felony theft. Sentencing was left to the discretion of the trial judge. After conducting a sentencing hearing, the trial judge sentenced the Defendant to ten years in the Department of Correction. On appeal, the Defendant argues that she should have received the minimum sentence of eight years and should have been allowed to serve the sentence on probation. We affirm the judgment of the trial court.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a <u>de novo</u> review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a <u>de novo</u> review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of

potential for rehabilitation or treatment. State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987); Tenn. Code Ann. §§ 40-35-102, -103, -210.

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Defendant was employed as the bookkeeper for a business entity known as Delozier Management, which essentially operated and maintained the payroll for several retail establishments, both in the Sevier County area and out of state. Apparently, the Defendant's primary responsibility was writing the checks and maintaining the payroll accounts. Between 1993 and 1995, the Defendant developed and utilized a fraudulent check-writing scheme through which she stole almost a quarter of a million dollars from her employer. Because she kept the company's books, she was able to conceal her theft during the two and one-half year period in which the thievery occurred. The theft eventually forced her employer into bankruptcy and obviously caused the owners of the business financial hardship. One of the business owners testified that the amount of money embezzled by the Defendant totaled $248,441.37.

At the time of sentencing, the Defendant was forty years old, married, and had two adult children. She graduated from high school and had been steadily

employed all of her adult life.  She was described as very smart, capable, and a good employee.  She testified that once she started taking the money, she thought she would pay it back later, "and then it just got easier and easier from that, and I just got in way over my head."  She said she did not spend all of the money on herself, but let some other employees share in her scheme and gave some of the money to members of her family.  Although she did not keep up with how much she took, at the time the theft was detected she told the police that she thought she took about $120,000.00.  She said that she had always had trouble dealing with finances.  During this time the Defendant and her husband built a house for about ninety-eight thousand dollars, but she testified that there was a ninety-two thousand dollar mortgage on it.  Other than saying that she spent the money on bills, clothing, furniture, and general expenses, the Defendant never explained where all the stolen money went.

The Defendant had no history of prior criminal convictions.  On direct examination she stated that she left her prior job with the Sevierville Housing Authority to work for Delozier Management because she "wanted a change of job."  On cross-examination, however, she admitted that she was forced to quit the previous job because she had been caught stealing from petty cash.  She also admitted that earlier in her employment with Delozier Management, she had used checks from her employer to pay personal expenses amounting to about fifteen hundred dollars.  When confronted with this, the Defendant admitted her mistake and eventually paid the money back.  Her employer allowed her to keep her job because she was a good, smart employee.

While the Defendant was out on bond on these charges, and obviously after having been terminated from her employment, the Defendant utilized the services of United Parcel Service (UPS) to deliver personal items for her but charged the services to her former employer's UPS account. She also wrote some bad checks during the time she was out on bond awaiting disposition of and sentencing for these charges.

In sentencing the Defendant, the court found and applied three enhancement factors: (1) that the Defendant ?has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"; (2) that the amount of property taken from the victim was particularly great; and (3) that the Defendant ?abused a position of . . . private trust, or used a special skill in a manner that significantly facilitated the commission . . . of the offense." See Tenn. Code Ann. § 40-35-114(1), (6), (15).

Because the punishment for theft is enhanced based upon the amount taken, the Defendant argues that the trial judge erred by applying as an enhancement factor that the amount of property taken from the victim was particularly great. See State v. Grissom, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997). In Grissom, the Defendant pleaded guilty to one count of Class C felony theft, which is the theft of property valued at ten thousand dollars or more, but less than sixty thousand dollars. Id. at 516. The Defendant had embezzled approximately twenty-nine thousand dollars. The Grissom court pointed out that enhancement had been allowed in other cases when the amount stolen had approached the amount necessary to put the offense into the next higher grade of theft. Id. at 518 n.4. Here, even though the Defendant pleaded guilty to the

highest grade of theft, same being a Class B felony when the value of the property stolen is sixty thousand dollars or more, the proof at the sentencing hearing showed that the Defendant stole over four times the amount necessary to qualify as a Class B felony. Under the circumstances of this case, we believe the trial court correctly applied this enhancement factor.

Concerning mitigating factors, the trial court found that the Defendant's conduct neither caused nor threatened serious bodily injury and that the Defendant had assisted in recovering some of the property involved in the crime. Tenn. Code Ann. § 40-35-113(1), (10). At the time the Defendant was confronted with her crime, she voluntarily turned over three thousand nine-hundred eleven dollars in cash which she had on her person at the time.

The sentencing range for a standard offender convicted of a Class B felony is from eight to twelve years. The trial judge set the Defendant's sentence at ten years — the midpoint in her range — and ordered that the sentence be served in the Department of Correction.

Because stealing over sixty thousand dollars is a Class B felony, there is no presumption that the Defendant is a suitable candidate for alternative sentencing options as afforded those convicted of a Class C, D, or E felony. See Tenn. Code Ann. § 40-35-102(6). Guidance in determining what factors are to be considered for alternative sentences may be found in Tennessee Code Annotated § 40-35-103(1), which states:

Sentences involving confinement should be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1); see Ashby, 823 S.W.2d at 169. A court may also apply the mitigating and enhancing factors set forth in Tennessee Code Annotated §§ 40-35-113 and -114, as they are relevant to the § 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Finally, ?the potential or lack of potential for rehabilitation of a defendant should be considered in determining whether [she] should be granted an alternative sentence." State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996) (citing Tenn. Code Ann. § 40-35-103(5)).

For a denial to occur based on the circumstances of the offense, ?the criminal act, as committed, must be ‹especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring probation." State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985) (quoting State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981)). This principle has been codified in § 40-35-103(1)(B), which provides for confinement to avoid depreciating the seriousness of the offense. State v. Hartley, 818 S.W.2d 370, 375 (Tenn. Crim. App. 1991); see also State v. Fletcher, 805 S.W.2d 785, 787 (Tenn. Crim. App. 1991). Sentencing decisions should not, however, turn on a generalization of the crime committed, such as the fact that a death occurred. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995).

When a defendant is not afforded the presumption of suitability for alternative sentencing, the defendant bears the burden solely to establish that a sentence alternative would "subserve the ends of justice and the best interests of both the public and the defendant.'" Bingham, 910 S.W.2d at 456 (quoting Hooper v. State, 297 S.W.2d 78, 81 (Tenn.1956)). After sentencing the Defendant, the trial judge stated,

> [j]ust let the Court say that if this person does not deserve to go to the penitentiary for stealing $248,000.00 over several years' period, to continue to commit crimes, to continue to steal from the same victims after you've been charged on these offenses, if she doesn't deserve to go to the penitentiary, there's not a person who has ever lived who deserves to go to the penitentiary.

We interpret this statement to reflect the trial judge's rather strong concern with Defendant's history of theft, the seriousness of the offense, the need for deterrence, and the Defendant's questionable potential for rehabilitation.

Based upon our review of this record, we simply cannot conclude that the trial judge erred or abused his discretion by sentencing the Defendant to serve ten years in the Department of Correction as a Range I standard offender. The judgment of the trial court is accordingly affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
THOMAS T. WOODALL, JUDGE