IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2008

## STATE OF TENNESSEE v. CAMELIA MONIQUE FIELDS

**Direct Appeal from the Circuit Court for Madison County**
**No. 07-164    Donald H. Allen, Judge**

_____

**No. W2007-01362-CCA-R3-CD  - Filed July 9, 2008**

_____

The appellant pled guilty in the Madison County Circuit Court to theft of property valued between $1,000 and $10,000.  The trial court sentenced her as a Range I, standard offender to two years to be served on probation supervised by Community Corrections.  On appeal, the appellant contends that the trial court erroneously denied her request for judicial diversion.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Camelia Monique Fields.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant entered a plea of guilty to theft of property valued over $1,000 on April 23, 2007.  At that hearing, the appellant agreed that between November 26 and 29, 2006, she took $2,450 in cash and gift cards from Target, her employer, without paying for them.  She requested judicial diversion. At the May 21, 2007 sentencing hearing, she testified that she was twenty years old and lived with her mother in Jackson, Tennessee.  She had attended South Side High School but did not graduate.  She successfully completed the Job Corps program in Bristol, Virginia, getting her General Equivalency Diploma (GED) and learning the trades of painting and carpentry.  She returned

to Jackson on September 11, 2006.

The appellant testified that she was fired from her job at Target due to the present offense. At the time, she had given a statement to "Ms. Ginger,"[1] which she read into the record. In the statement, she explained that she had taken a large amount of money in order to get an apartment because she "was going through some things with [her] mother and family." She apologized to Target and stated that she never planned to do something like this again. In the statement, she explained that she planned to attend Lane College the following fall and to get another job. After reading her statement, the appellant expressed her remorse for what she did, apologized to Target and the trial court, and explained that she could have avoided committing the offense but failed to "think twice" about her actions.

The appellant testified that after she lost her job at Target, she worked at Subway for a few months. At the time of the hearing, she was looking for a job, was pregnant, and her baby was due in October 2007. Although she would have to delay her plans for college due to her pregnancy, she was looking for employment through the career center and was willing to accept any type of job. The appellant stated that after the baby was born, she planned to work to support herself and her child. She said that her relationship with her mother, who worked as an electrician, was fine now. She believed that the home she shared with her mother was a good environment for her. She stated that she did not have nor had she ever had a drug problem.

On cross-examination, the appellant agreed that she planned the theft over the course of several days. It took her about one week to take the $2,450. She said that she gave some of the money in the form of gift cards to her mother, brother, and friends, who did not know that they were stolen. She admitted having two traffic violations for driving without car insurance. She said that she was hit by someone who left the scene of the accident, and she drove her friends who were in the car to the hospital. She explained a "failure to appear" on her record, saying that she had arrived at court late on that occasion. She did not have a driver's license, a car, or car insurance at the time of the judicial diversion hearing. She was in the process of getting a driver's license now that she had obtained her GED.

In response to questioning by the trial court, the appellant testified that her mother withdrew her from high school because she had already failed the ninth grade twice and she was going to fail again. She was in the Job Corps program, which is designed to teach job skills, for eleven months. While working at Target, she took money a total of five times, taking it from the cash register drawer twice and putting it on gift cards two to three times. She stole the money over the course of a week. She ultimately used some of the money to repay her mother for bailing her out of jail. The rest of it "just went everywhere," including the purchase of clothes and shoes. She worked at Target for one and one-half to two months before she was fired. She was fired from her subsequent job at Subway

---

[1]The indictment lists Ginger Bishop from Target as a witness for the State. The record suggests that she may be the loss prevention officer called simply "Ms. Ginger" or "Ginger" in the testimony and judicial diversion report.

because they did not understand her absences to attend court proceedings.

The trial court made the judicial diversion report an exhibit to the hearing. The report states that the appellant is single. The affidavit of complaint to her charge states that an audit report showed the appellant's cash drawer to be short from November 26 to December 2. On December 2, she was called to the Target office and asked about the shortage on the days she had worked. The appellant admitted that she had taken money and gift cards totaling $2,450 and gave a statement. With regard to the appellant's criminal history, the report relates that she violated the truancy law on May 28, 2003. She was convicted of driving without a driver's license and with no proof of insurance on May 18, 2004. She pled guilty to second offenses of driving unlicensed and without insurance on August 16, 2004, but no judgment was entered. Instead, she was given thirty days to progress toward attaining her GED and her driver's license. She failed to appear in court on September 28, 2004. The appellant reported working as a cashier at Target for about one month before being fired due to the instant offense. She stated that she worked at Subway as a sandwich artist for about five months before quitting. She also reported working as a cashier at Popeye's Chicken for three months but did not give the dates of this employment.

The trial court found that although the Job Corps is a good program, the twenty-year-old appellant had not done much with her life since completing it. She had obtained employment with Target in November 2006; but within a month, she stole over $2,400 from her employer on several occasions during a week. The trial court found that the appellant took gift cards in order to conceal the theft. The appellant used some of the stolen money for herself and gave some to family members. With regard to her employment history, the trial court found that the appellant had also been fired from a subsequent position at Subway. It attributed her inability to maintain employment to her failure to learn job skills and to be disciplined. It found that the appellant was not actively seeking employment at the present time due to her pregnancy. The trial court also noted that the appellant's criminal record, involving two incidents of driving without a license, illustrated a lack of discipline and direction in her life.

The trial court determined that the appellant's offense was serious and not an isolated incident. It found that the appellant's theft had taken much planning and forethought to accomplish. Based upon these findings, the trial court denied the appellant's request for judicial diversion. It sentenced the appellant per her plea agreement to two years as a Range I, standard offender, in the Tennessee Department of Correction. The court suspended all jail time and placed the appellant on probation for two years to be supervised by Community Corrections. It ordered that she pay $2,450 in restitution and court costs at a rate of $150 monthly.

## II. Analysis

The appellant contends that the trial court erroneously denied her request for judicial diversion because it considered only the circumstances of her offense and did not weigh the remaining criteria for judicial diversion. She maintains that her lack of any significant criminal history, her completion of the Job Corps program, her remorse, and her future goals all weigh in favor of granting her judicial

diversion. The State asserts that the trial court properly denied judicial diversion based upon the circumstances of the appellant's offense. It argues that although the trial court did not expressly state the weight that it was giving to the various factors, its analysis reveals that it considered all the factors. We agree with the State that the trial court's findings show that it weighed all the factors and did not abuse its discretion in denying judicial diversion.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See Tenn. Code Ann. § 40-35-313(a)(1)(B). It is within the trial court's discretion to grant or deny judicial diversion. See State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). As such, the trial court's decision will be overturned only if the court abused its discretion. Id. In other words, we will not interfere with the denial of judicial diversion if the record contains any substantial evidence to support the trial court's refusal to grant diversion. Id. Moreover, we observe that "judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under [Tennessee Code Annotated section] 40-15-105." State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997). Additionally, the trial court should consider whether judicial diversion serves the ends of justice–that is whether it supports the interests of the public as well as those of the defendant. Id. The record must reflect that the trial court has taken all of the factors into consideration. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). As a consequence, "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." Id. Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id.

The trial court's findings at the sentencing hearing demonstrate that it denied the appellant's request for judicial diversion primarily because she committed the offense by taking money and gift cards on five occasions over several days. The trial court commended the appellant on completing the Job Corps program and securing employment at Target shortly thereafter. However, the trial court found that her discharge from her subsequent job at Subway, her criminal history of driving without a license, and her questionable efforts in seeking employment at the time of the hearing revealed that the appellant lacked direction and discipline.

The nature and circumstances of an offense alone may support a denial of judicial diversion. State v. Kyte, 874 S.W.2d 631, 634 (Tenn. Crim. App. 1993). Indeed, the commission of an offense in separate actions over a period of time indicates a sustained intent to violate the law on the part of

the appellant. State v. Danielle L. Walker, No. E2000-00578-CCA-R3-CD, 2001 WL 301156, at *3 (Tenn. Crim. App. at Knoxville, Mar. 29, 2001) (affirming the trial court's denial of judicial diversion because the appellant cashier had stolen over $3,000 from employer in twenty-nine occasions over about three weeks). We agree with the trial court that the repetitious nature of the present offense, indicating the appellant's sustained intent to violate the law, weighs heavily against the granting of judicial diversion.

Additionally, we observe that the appellant abused a position of private trust by stealing from her employer. See State v. Grissom, 956 S.W.2d 514, 518 & n.5 (Tenn. Crim. App. 1997); see also Walker, No. E2000-00578-CCA-R3-CD, 2001 WL 301156, at *4, State v. Kavious L. Newsom, No. 02C01-9806-CR-00166, 1999 WL 588155, at *5 (Tenn. Crim. App. at Jackson, Aug. 6, 1999). Accordingly, "other potential employers [have] a clear interest in knowing" about the appellant's present conviction. State v. Patricia Bohnenstiehl, No. 03C01-9801-CC-00035, 1999 WL 39501, at *2 (Tenn. Crim. App. at Knoxville, Jan. 28, 1999). This shows that the pubic's interest is better served by denying the appellant judicial diversion.

The trial court made findings with regard to the other factors in addition to the circumstances of the offense. It considered her criminal history of driving without a license on two occasions to reveal a lack of discipline and direction in the appellant's life. This lack of discipline and direction also negatively implicates her amenability to correction. With regard to her social history, the trial court commended her completion of the Job Corps program and her obtaining a position at Target shortly thereafter. The trial court's findings that the appellant had not "really tried to improve her life" but, instead, began stealing from her employer shortly after these two accomplishments reveal that it found the circumstances of the offense to outweigh her positive social history. With regard to the appellant's physical health, the trial court considered the appellant's pregnancy and its impact on her ability to maintain future employment. Finally, the trial court considered the deterrence value of judicial diversion when it found the appellant's offense–stealing thousands of dollars from one's employer–to be a serious one and not the type of offense for which it normally granted judicial diversion.

We also note that the trial court's statement that it did not believe that the appellant was seeking employment despite her testimony that she was looking for a job indicates that the trial court questioned her credibility. Additionally, following its sentencing of the appellant, the trial court stated that it found her explanation that she was fired from Subway because she had to come to court hard to believe. This also indicates that the trial court found the appellant's credibility to be lacking. The credibility of the appellant's testimony is a matter for the trial court to decide. State v. Freddy Allen Perry, No. M2000-00013-CCA-R3-CD, 2001 WL 1028816, at *3 (Tenn. Crim. App. at Nashville, Sept. 7, 2001). The appellant's lack of credibility weighs against her amenability to correction. State v. Charles Smith, No. 02C01-9805-CR-00128, 1999 WL 487029, at *3 (Tenn. Crim. App. at Jackson, July 12, 1999) (a trial court's finding of untruthfulness is alone enough to uphold the denial of judicial diversion); see also Anderson, 857 S.W.2d at 574 (a defendant's lack of sincerity reflects negatively on his potential for rehabilitation).

We hold that the trial court considered all of the appropriate factors and simply found that the circumstances of the offense outweighed the appellant's positive points. The record contains substantial evidence to support the trial court's findings. Accordingly, the trial court did not abuse its discretion in denying judicial diversion.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE