# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 10, 2009

## STATE OF TENNESSEE v. JEFF D. ARP

**Direct Appeal from the Criminal Court for Jackson County**
**Nos. 06-30, 06-112      David G. Hayes, Senior Judge**

---

**No. M2008-02123-CCA-R3-CD - Filed June 22, 2010**

---

Appellant Jeff D. Arp pled guilty to two counts of incest stemming from two separate incidents involving his mentally disabled teenage daughter. One incident took place before the effective date of the 2005 amendments to the Sentencing Reform Act of 1989, and one incident took place after the effective date. Appellant chose to be sentenced under the prior law for the first offense. The trial court imposed a sentence of five years for each conviction, to be served consecutively, and denied alternative sentencing. Appellant claims that the trial court erred in its application of the enhancement factors and in denying alternative sentencing. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

W. K. Cather, Lebanon, Tennessee, for the appellant, Jeff D. Arp.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; and Justin Harris, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The record reveals that Appellant, who was in his late-thirties at the time of the offenses, pled guilty to two counts of incest under Tennessee Code Annotated section 39-15-

302. Appellant was charged in two indictments with incest and the rape of his daughter. According to the evidence adduced at the sentencing hearing, Appellant admitted to engaging in anal and oral sex with his mentally disabled teenage daughter. Pursuant to a plea agreement, the State dismissed the two rape charges, and the parties agreed Appellant would serve the sentences for his two convictions consecutively. The trial court was to determine the length and manner of sentence.

The factual basis for Appellant's guilty plea was provided in one, short statement by the Assistant District Attorney General: "Judge, in Jackson County, Tennessee, on or about December 2005, [Appellant] did have a sexual relationship with his daughter—granddaughter—and this did occur twice, Judge, in and around that time."[1]

Despite the skimpy factual recitation at the plea hearing, the parties agreed that the charges stem from two separate incidents. The incidents gave rise to the two indictments, numbered 06-112 and 06-30. At sentencing, the parties and the court realized one of the incidents occurred in December 2005, and the other occurred within the year leading up to that time. The parties and the court agreed that the earlier episode took place prior to June 7, 2005, the effective date of the 2005 amendments to the Sentencing Reform Act of 1989. Appellant refused to waive his right to be sentenced under the unamended statute. Therefore, the parties and the court agreed that Appellant's sentence for his conviction on indictment 06-112 should be governed by the law as it stood before the 2005 amendments, and his sentence for his conviction under indictment 06-30 should be based upon the amended law.

Three witnesses testified at the sentencing hearing. The first, Donnie Webb, was the Tennessee Probation and Parole Officer assigned to Appellant's case. Mr. Webb prepared a presentence report which was admitted as an exhibit. Mr. Webb testified that the records he was provided reflected that Appellant admitted in February 2006 "to having anal sex with his daughter in December[] 2005 and to oral sex one year earlier." However, when Mr. Webb interviewed Appellant regarding the events, Appellant "stated he didn't remember anything happening" and told Mr. Webb that he "pled guilty to get it over with and that he didn't want to put his daughter through anymore of this." In addition, Mr. Webb testified that Appellant, who was thirty-nine years old at the time of the hearing, had no prior convictions and had a steady employment history prior to 2003. Appellant had been unemployed since 2003 and had applied for Social Security Disability benefits. Mr. Webb testified that he received a victim impact statement from the family, which he attached to the presentence report.

---

[1] We note that Judge J.O. Bond presided at the guilty plea hearing and Judge David G. Hayes presided at the sentencing hearing.

Mr. Webb also testified that he requested a psychosexual report for Appellant. That report, which was admitted as an exhibit, contains the following description of the incidents and Appellant's statements about them:

> [Appellant] allegedly admitted these acts to police officers during the initial interview. He stated that his daughter had asked him for anal sex as she was "curious about sex." During [the psychosexual report] interview, however, [Appellant] denied any memory of the incidents. When confronted, he admitted he "did not want" to remember which he allowed could have an impact on his memory. He opined that it was his daughter's idea, and he denied any intent, sexual interest, or fantasy about her. He did however, think he needed "mental treatment" as a result of his offense when asked what punishment he should receive.

The report contained a recommendation that Appellant should receive "sex-offender-specific mental health treatment."

Angela Mayberry, the victim's mother, testified about the devastating impact the crimes had on the victim and her family. She explained that the victim is mentally disabled, with an IQ of 51. Ms. Mayberry told the court that Appellant's actions have "just messed up [the victim's] life." Prior to these events, the victim "was happy and she loved living." Ms. Mayberry testified that she now "worr[ies] that [the victim is] going to hurt herself." Since the crimes, the victim had become depressed and often did not want to get out of bed. Moreover, she obsessed over the notion that she was impregnated by Appellant. This obsession resurfaced every month. Ms. Mayberry also testified about the financial toll the crimes took on the family as well the impact they had on the victim's younger brother. Ms. Mayberry and Appellant divorced following his arrest.

Abbey Eisel, a professional counselor who had worked with the victim for over two years, explained that the victim had become increasingly isolated and that she suffered from irrational guilt over the episodes. In addition to other devastating problems, these issues have translated into "negative thoughts" about everyday life. Ms. Eisel testified that, in the year leading up to sentencing, the victim had become "extremely afraid of being pregnant," to the point of being delusional about it. The victim insisted on taking multiple pregnancy tests, including blood tests. The victim's delusions led her to "hit[] herself in the stomach" because she feared she was pregnant. Ms. Eisel noted, however, that the victim's condition had improved somewhat with medication.

At the conclusion of the hearing, the trial court sentenced Appellant to five years for each conviction and rejected his request for alternative sentencing. Because the parties

agreed that the sentences should be served consecutively, the court's analysis was confined to the length of sentence and the manner of service. With respect to the length of sentence, the court noted that the analysis was "a little bit convoluted" because it was governed by the two versions of the Sentencing Act. However, the court concluded that two enhancement factors applied to both offenses. First, the court found that Appellant abused a position of trust. See Tenn. Code Ann. § 40-35-114(14). Second, the court found that the victim's mental disability made her particularly vulnerable. See id. at (4). The court further concluded that there were only "very slight mitigating" factors. It gave no weight to Appellant's clean criminal record because, as the court put it, "it's incumbent upon every citizen not to commit criminal acts." The court gave slight mitigating weight to Appellant's stable employment history. Based upon the enhancing and mitigating factors, "and other circumstances of the offense that are . . . not enhancers [but] are difficult to ignore," including the victim's need for "extensive counseling" and "medication," the court sentenced Appellant as a Range I standard offender to five years for each conviction.[2]

The court then turned to the manner of service. It concluded that alternative sentencing was not appropriate under either version of the Sentencing Act. Specifically, the trial court found that alternative sentencing "would unduly depreciate the seriousness of these offenses." It noted that incest, both generally and in this case, "is offensive, repugnant and reprehensible." It also found that, despite his guilty pleas, Appellant had still not accepted responsibility for his conduct and therefore was unlikely amenable to rehabilitation. The court thus denied alternative sentencing.

The court specifically delineated three reasons for denying alternative sentencing: (1) the nature of the offenses; (2) the court's "application of enhancing factors, specifically, the victim's vulnerability due to her pronounced mental disability"; and (3) Appellant's "refusal to accept responsibility for his actions."

On appeal, Appellant contends that the trial court erred by sentencing him above the three-year minimum on the pre-2005 amendment conviction. He also argues that the trial court abused its discretion in setting his sentence for the post-2005 amendment conviction and denying alternative sentencing.

## II. Analysis

---

[2] After listing these considerations—including the non-enhancement circumstances—the court explained that its sentence was based "[p]rimarily and solely upon [the] two enhancing factors."

As a preliminary matter, the State contends that Appellant did not provide a complete transcript of the plea hearing and therefore waived his appeal. We disagree. The transcript, albeit brief, is included in the record on appeal.

Appellate review of the length and manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by Appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on Appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. See id. at (d); Ashby, 823 S.W.2d at 169.

Appellant first contends that the trial court erred in sentencing him "for some reason" to more than the minimum three-year term. He seems to suggest that the trial court's elevated sentence was totally "out of the blue" and not based upon any enhancement factors. However, the record reflects that the trial court based its decision to elevate Appellant's sentence on its finding of two enhancement factors. Read more charitably, Appellant's argument is that the trial court improperly relied on enhancement factors that did not meet the requirements of Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and related cases. Without those improper enhancements, the argument goes, Appellant was entitled to a sentence no greater than the three-year statutory minimum. Therefore, the real question in this case is whether the record supports those findings. It does.

As noted above, Appellant was sentenced as a Range I standard offender. Prior to the 2005 amendments, "the Sentencing Act set forth a 'presumptive sentence' to be imposed within the applicable range," and for Appellant's Class C felony the presumptive sentence was the three-year statutory minimum, see Tenn. Code Ann. §§ 40-35-210(c) & 40-35-112(a)(3). If the trial court found applicable enhancement factors, see Tenn. Code Ann. § 40-35-114, then it "had authority to increase the presumptive sentence up to the maximum within the range," Carter, 254 S.W.3d at 342 (citing Tenn. Code Ann. § 40-35-210(d)), which is six years in this case, see Tenn. Code Ann. § 40-35-112(a)(3). If the trial court found both

enhancing and mitigating factors, then it could calibrate the sentence within the range, weighing each factor in its discretion. See Carter, 254 S.W.3d at 342. However, absent an applicable enhancement factor, the trial court was confined to the presumptive minimum.

In State v. Gomez, our supreme court recognized that judge-found enhancements under the pre-2005 amendment Sentencing Act could not withstand United States Supreme Court scrutiny. 239 S.W.3d 733, 738-41 (Tenn. 2007) (citing Apprendi, 530 U.S. 466; Blakely, 542 U.S. 296; Cunningham v. California, 549 U.S. 270 (2007)). It concluded that Apprendi and its progeny prohibited a trial court from sentencing a defendant above the presumptive sentence when the facts triggering an enhancement factor were not found beyond a reasonable doubt by a jury or were not prior convictions or facts admitted by the defendant. See id. at 739-41.

In order to raise Appellant's pre-2005 amendment sentence above the minimum, the trial court had to rely upon prior criminal history or facts to which Appellant had admitted. An admission could come from the plea hearing. The factual allegations recited at the plea hearing were simply that "in Jackson County, Tennessee, on or about December 2005, [Appellant] did have a sexual relationship with his daughter . . . and this did occur twice . . . in and around that time." In short, nothing in the record reflects that, prior to sentencing, Appellant admitted—*in the Apprendi sense of the word*—that the victim had a mental disability. The trial court thus seemingly erred in relying upon enhancement factor (4). Notably, Appellant admits in his brief that he "cannot in good conscience" contest that the victim *is* mentally disabled and was therefore appropriately considered especially vulnerable under enhancement factor (4).

We need not determine whether enhancement factor (4) applies because, regardless, Appellant admitted that the victim was his daughter when he pled to an indictment that specifically alleged as much. Thus, the trial court could extrapolate that Appellant abused a position of trust in committing this crime. See Tenn. Code Ann. § 40-35-114(14); see also State v. Richard L. Thompson, No. M2000-01429-CCA-R3-CD, 2001 WL 1028822, at *7 (Tenn. Crim. App. at Nashville, Sept. 7, 2001) (holding that because "[c]hildren trust their custodial parents to care for and protect them," a stepfather committing a sexual offense against his stepdaughter is eligible for the breach of trust enhancement). The trial court was entitled to use its discretion to weigh enhancement factor (14) against the mitigating weight of Appellant's work history. The trial court's evaluation of those factors—giving strong weight to the enhancement and "slight" weight to the mitigating factor—was not an abuse of discretion. Consequently, neither was the resulting five year sentence for the pre-2005 amendment offense.

We therefore turn to Appellant's claims regarding the trial court's post-2005 amendment sentencing analysis. Essentially, Appellant claims that the trial court abused its discretion because it implicitly found that, based upon the victim's mental retardation, Appellant coerced the victim. He also argues that the trial court must have failed to properly consider the Sentencing Act's purposes and principles because it sentenced him to one year less than the statutory maximum. We are not persuaded.

Our legislature passed the 2005 amendments in response to the United States Supreme Court's ruling in Blakely to ensure that Tennessee's sentencing scheme could withstand Sixth Amendment scrutiny. See Carter, 254 S.W.3d at 342-43. The amendment removed the Sentencing Act's presumptive sentences and gave trial courts the freedom "to select any sentence within the applicable range so long as the length of the sentence is consistent with the purposes and principles of the Sentencing Act." Id. at 343 (quotation marks and brackets omitted). In other words, the enhancement and mitigating factors became only advisory. Because the relevant statutory maximum for Apprendi purposes is the maximum allowed in the range as dictated by Tennessee Code Annotated section 40-35-112, trial courts are free to rely upon judge-found facts in arriving at a sentence within the appropriate range. See Tenn. Code Ann. § 40-35-210(b). In the present case, this means that the trial court could rely upon the evidence derived from the sentencing hearing. The trial court could therefore unquestionably find both that the victim was particularly vulnerable due to her mental disability and that Appellant breached her trust as discussed above. It could therefore properly apply enhancement factors (4) and (14). The evidence was more than adequate to support those findings. Appellant says the trial court's decision to sentence him just below the maximum does not conform to the Sentencing Act's purposes and principles. However, he does not elaborate beyond that conclusory statement. We disagree. The trial court properly evaluated the enhancing and mitigating factors and the Act's purposes and principles in making its decision. It did not abuse its discretion in doing so.

Appellant's final argument is that the trial court erred in denying alternative sentencing. Because Appellant is a standard offender convicted of a Class C felony and does not fit within the parameters of Tennessee Code Annotated section 40-35-102(5), he "should be considered a favorable candidate for alternative sentencing." Tenn. Code Ann. § 40-35-102(6). Or, as was the case prior to the 2005 amendments, he is "presumed to be a favorable candidate." See State v. Grissom, 956 S.W.2d 514, 519 (Tenn. Crim. App. 1997). That presumption may be rebutted with evidence supporting any of three different considerations. See Tenn. Code Ann. § 40-35-103. In evaluating the presumption, the trial court may "look to evidence or information offered by the parties on the statutory enhancement and mitigating factors" and "should take into account the potential or lack of potential for a defendant's rehabilitation." Grissom, 956 S.W.2d at 519; see also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996).

In denying alternative sentencing here, the trial court found that "[c]onfinement is necessary to avoid depreciating the seriousness of the offense." Tenn. Code Ann. § 40-35-103(1)(B). It also concluded that Appellant was unlikely to be successfully rehabilitated because he refused to accept responsibility for the offenses. In order to support a finding that alternative sentencing would depreciate the seriousness of a crime under section 103(1)(B), "the circumstances of the offense . . . must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." Bingham, 910 S.W.2d at 454 (quotation marks omitted). The State must present evidence supporting that conclusion. Id. at 455.

Appellant argues that the trial judge allowed his personal opinions regarding incest to unduly sway his decision and that he improperly predetermined that confinement was necessary. We disagree. Our reading of the record indicates that the trial judge carefully considered the relevant factors in evaluating the propriety of alternative sentencing. Importantly, the trial court considered the circumstances of the offense and the evidence of Appellant's potential for rehabilitation, as presented to it during the sentencing hearing. The evidence revealed that this case involved a father in his mid-thirties who admitted that he was guilty of incest. Initially, he admitted that he committed the offenses but asserted that he did it at the victim's request. He then denied responsibility for it to his counselors. We have no difficulty concluding that the State demonstrated that the circumstances of Appellant's offenses were especially horrifying, shocking, reprehensible, or offensive. The evidence further supports the trial court's conclusion that Appellant refused to accept responsibility for his actions. This suggests, as the psychosexual evaluation indicated and the trial court concluded, that Appellant is not amenable to rehabilitation. Lastly, as described above, the record also supports the application of two enhancement factors, which strongly outweighed the minimal mitigating value of Appellant's employment history and lack of criminal history. These reasons presented a sufficient basis to deny alternative sentencing. The trial court therefore did not abuse its discretion in denying alternative sentencing.

### III. Conclusion

Based upon our review of the record and the parties' briefs we affirm the judgments of the trial court.

NORMA McGEE OGLE, JUDGE