# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 18, 2001

## STATE OF TENNESSEE v. CYNTHIA TAYLOR MANN

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40324    John H. Gasaway, III, Judge**

---

**No. M1999-01390-CCA-R3-CD - Filed May 8, 2001**

---

The Defendant pleaded guilty to theft of property valued over sixty-thousand dollars, a Class B felony. The trial court sentenced the Defendant as a Range I, standard offender to the minimum eight-year sentence, to be served in the Tennessee Department of Correction. The Defendant now appeals, arguing that the trial court erred in denying her alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Collier W. Goodlett, Assistant Public Defender, Clarksville, Tennessee, for the Appellant, Cynthia Taylor Mann.

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; John W. Carney, Jr., District Attorney General; and B. Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant pleaded guilty to theft of property valued over sixty-thousand dollars, a Class B felony, with the manner of service to be determined at a sentencing hearing. The trial court sentenced the Defendant as a Range I, standard offender to the minimum eight-year sentence, to be served in the Tennessee Department of Correction. The Defendant now appeals, arguing that the trial court erred in denying her alternative sentencing. Specifically, the Defendant challenges the trial court's application of certain enhancement factors in determining her sentence. We affirm the judgment of the trial court.

FACTS

In April 1998, the law firm of Marks, Maness and Shell became concerned that its trust account was being mishandled. The firm contacted Bob Yates, a partner in the accounting firm of Thurman, Campbell, and Company to examine the records. Yates testified that he made a list of the items that he would need to examine the account and gave that list to the Defendant, who was the loan-closing agent for the firm. These items included bank statements, cancelled checks, any other documents of original entry and supporting ledgers. Yates received an incomplete bank statement from the Defendant for May 1998, and he informed Carmack Shell, a partner in the law firm. When Yates was finally able to attain the necessary documents, he identified disbursements in excess of proceeds on the Defendant's employee construction mortgage loan in the amount of $357,000.

Carmack Shell, a partner at Marks, Maness and Shell, testified regarding the Defendant's role in real estate closings handled by his firm. Shell testified that the Defendant "ultimately did the loan closings herself." Shell testified that he did not believe he would ever be able to collect on the loss to his firm because the Defendant has never offered to pay anything. Shell testified that because of the Defendant's actions, his firm was unable to pay its employees their entire annual end-of-the-year bonuses.

Laura Mann, Carmack Shell's secretary, testified that because of the Defendant's actions she was not able to receive her full end-of-the-year bonus or receive a contribution from the firm for her retirement. Carol Canady, secretary to Albert Marks, who is a partner at the law firm, testified that she did not receive her retirement contribution from the firm and that she received only a portion of her bonus because of the Defendant's actions. Although there was no guarantee that any of the employees would receive a bonus each year, Mann had received one for the last twelve or thirteen years.

Dana Robertson, an employee at Marks, Maness and Shell, testified that during the period of time in question, she was working on various types of cases at the firm including wills and divorces. Robertson testified that the Defendant asked her to forge client signatures on certain mortgage documents. Robertson testified that she saw the Defendant forge signatures on the documents. Robertson also testified that she did not receive her bonus or retirement because of the Defendant's actions.

Lori Nelson, the Defendant's assistant, testified that she worked in the real estate section with the Defendant. Nelson testified that the Defendant never prepared any balance sheets on the trust account. Nelson also testified that she was a friend of the Defendant and that they would sometimes go shopping together. Nelson testified regarding the Defendant's extravagant spending habits.

ANALYSIS

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the

determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

Because the Defendant agreed to the minimum eight-year sentence as part of her guilty plea, the only issue for the trial court to determine was the manner of service of the eight years. The Defendant argues on appeal that the trial court erred in denying probation or some type of alternative sentence. With certain exceptions, a defendant is eligible for probation if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a). "Although probation 'must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law.'" State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997) (citing Tenn. Code Ann. § 40-35-303(b) sentencing comm'n cmts). In determining whether to grant or deny probation, the trial court may consider the circumstances of the offense; the defendant's criminal record, background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The trial court may also consider evidence offered by the parties on the statutory

enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(b)(5); State v. Grissom, 956 S.W.2d 514, 519 (Tenn Crim. App. 1997). The defendant has the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169. Additionally, a defendant seeking full probation bears the burden on appeal of showing that the sentence imposed is improper and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

However, we further note that even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated § 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

In sentencing the Defendant, the trial court applied the following enhancement factors: (1) [t]he offense involved more than one (1) victim; (2) [t]he personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great; (3) [t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement; and (4) [t]he defendant abused a position of public or private trust, or used a special skill in a manner that significantly facilitated the commission or the fulfillment of the offense. Id. § 40-35-114(3), (6), (7), (15). The only mitigating factor applied was that the Defendant's actions did not cause or threaten to cause serious bodily injury. Id. § 40-35-113(1).

The Defendant argues that the trial court erred by finding that the crime involved more than one victim. This Court has previously held, in a case quite similar to this one, that the employees where the defendant worked constituted multiple victims. See State v. Lesa Mae Malone, No. 01C01-9706-CC-00234, 1998 WL 427387, at *5 (Tenn. Crim. App., Nashville, July 30, 1998). In this case, there was testimony that the partners at Marks, Maness and Shell were personally liable for the loss to their firm. Shell testified that because of the Defendant's actions, the partners all signed a note for $400,000 to cover the loss. In addition, evidence was presented at the sentencing hearing that the employees of the firm did not receive their full year-end bonuses or a contribution to their retirement funds as they had in years prior. As such, we agree with the trial court that the Defendant's offense involved more than one victim.

The Defendant argues that the application of factor number six constitutes a double enhancement. Factor six states, in pertinent part, that "the amount of damage to property sustained by or taken from the victim was particularly great." Tenn. Code Ann. § 40-35-114(6). Specifically, the Defendant argues that this enhancement factor is inherent in the crime charged. This Court has

previously held that "since the punishment for theft is enhanced based upon the amount taken by the accused, use of this enhancement factor constitutes double enhancement in violation of the statute." State v. Grissom, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997). However, in this case evidence was presented that the Defendant took $357,000.00, which is almost six times the $60,000.00 required to constitute a Class B felony theft of property. "This Court has held this enhancement factor applicable in a case where the theft offense involved $52,000–an amount of money approaching the $60,000 amount necessary to put the offense into the next grade of theft and where the 'losses suffered by the [victim business] owners from the defendant's criminal conduct were particularly damaging.'" Id. at 518 n.4 (citing State v. Frank, No. 03C01-9209-CR-00303, 1993 WL 539401, at *4 (Tenn. Crim. App., Knoxville, Dec. 22, 1993)). Additionally, evidence was presented that employees of Marks, Maness & Shell did not receive their full year-end bonuses or contributions to their retirement funds, and the partners were required to sign a note for $400,000.00 to cover the loss caused by the Defendant's criminal conduct. Under those circumstances, we conclude that the application of this enhancement factor by the trial court was appropriate.

The Defendant argues that the trial court erred in finding that the Defendant committed the offense to gratify her desire for pleasure or excitement. Evidence was presented at the sentencing hearing regarding the Defendant's extravagant spending habits. Lori Nelson testified that on one occasion, the Defendant spent $600 at a department store while they were on their lunch break. Nelson testified that such a spending spree was "normal" for the Defendant. Nelson also testified that the Defendant purchased a Jeep Grand Cherokee and a new Harley Davidson motorcycle. Laura Mann testified that the Defendant bought her daughter a car when she was only fourteen years old. Carol Canady testified that the Defendant "seemed to probably eat at the best places and like to go, you know, take trips and things, buying jewelry." It is clear that the Defendant used a large portion of the money she took from the firm to satisfy her own extravagant tastes. In addition, the Defendant went to great lengths to take the money. These included bypassing the computer system and creating her own computer fields to hide the money.

The Defendant argues that the trial court erred in finding that the Defendant breached a position of private trust. We disagree. The Defendant was the loan-closing agent for the firm and handled most if not all of the closings herself. The firm placed a great deal of trust in the Defendant. The Defendant was the only person who really understood the computer program used for the transactions. When the Defendant misappropriated the funds that she was handling for the firm, she breached the trust that had been given to her by the firm.

We conclude that the trial court properly considered each of the foregoing enhancement factors in determining that the Defendant was ineligible for alternative sentencing. Regarding the circumstances of the offense, the trial court considered "the course of conduct of this Defendant, which involved many intentional transactions on her part, the sophistication at which the thievery was committed, the lack of taking full responsibility, lack of cooperation, the considerations regarding confinement, [and] the deterrence in the message to others."

Finally, the Defendant argues that the trial court's reliance on the need for deterrence in this case is misplaced. In sentencing the Defendant, the trial court found that in addition to the applicable enhancement factors, confinement was necessary to avoid depreciating the seriousness of the offense and to serve as a deterrent to others likely to commit similar crimes. A trial court's decision to incarcerate a defendant based on a need for deterrence will be presumed correct "so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). Although the record in this case lacks the deterrence evidence contemplated by Hooper, the denial of an alternative sentence by the trial court was based on other appropriate factors. Moreover, the Defendant failed to present any evidence showing that the sentence imposed was improper. Noting that the Defendant has the burden of establishing suitability for probation, we conclude that the Defendant failed to carry that burden.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE