IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2009

## STATE OF TENNESSEE v. HAZEL GILLENWATER

**Direct Appeal from the Criminal Court for Union County**
**No. 3463     E. Shayne Sexton, Judge**

---

**No. E2008-01701-CCA-R3-CD- Filed August 6, 2009**

---

The appellant pled guilty in the Union County Criminal Court to theft over ten thousand dollars, a class C felony, and official misconduct, a class E felony.  Pursuant to her plea agreement, she received a total effective sentence of three years to be served on probation.  The sole issue on appeal is the trial court's denial of her application for judicial diversion.  Upon review of the record, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and JAMES CURWOOD WITT, JR., J., joined.

Martha Yoakum and Larry Bryant, LaFollette, Tennessee, for the appellant, Hazel Gillenwater.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William Paul Phillips, District Attorney General, and Tracy Jenkins, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual Background**

At the hearing on the appellant's application for judicial diversion, the parties stipulated to the following facts supporting the appellant's convictions:

> [The appellant] was indicted in November of 2007 for theft of property in an amount greater than $10,000.00 . . . from the City of Maynardville.  An investigative audit performed by the Division of Municipal Audit within the Office of the State Comptroller of the Treasury revealed that from March 1, 2005 to January 31, 2007, the former city recorder, Hazel Gillenwater, took at least $20,361.98 in

collections without authority. The scheme employed by the defendant was sophisticated in many respects, yet simplistic in others. From falsifying the City's computer records to simply discarding other records in her own trash, the defendant was able to embezzle a significant amount of money from the City of Maynardville virtually undetected for a vast period of time.

The [appellant] would accept utility payments from the citizens of Maynardville, create false payment histories on their accounts, and conceal the theft of the collections by creating separate "batch" numbers for the receipts which would be virtually undetectable by any other clerks working along with the [appellant]. Also, the [appellant] simply stole police fines and utility fees paid to the City of Maynardville by citizens and customers. The city's deposit make-ups and account register reflect that portions of the collected and receipted amounts were never deposited and as city recorder, the [appellant] was the only person in charge of reconciling all collections and depositing them. The City of Maynardville, at different times, employed two accountants which revealed the fact that not all collections were being deposited. Auditors from the Division of Municipal Audit of the Comptroller's office discovered that the [appellant] stole approximately $20,361.98 from the City of Maynardville between March of 2005 and January 2007.

Darrell Edmondson, the city attorney for Maynardville, was the only witness to testify at the hearing on the appellant's application for judicial diversion. Before his testimony, he informed the court that the city had neither discussed nor voted to take any position with respect to the appellant's sentence. He testified that the city paid six thousand dollars to the Comptroller of the Treasury for the investigative audit and that those funds were not included in the appellant's restitution. He also said that the city had not voted to take any action to seek reimbursement for the cost of the audit.

The appellant did not testify and called no witnesses to testify on her behalf. Her version of the crimes as stated in the presentence report is as follows: "I was city recorder and treasurer. I was in charge of all the money coming in or going out." During his argument at the conclusion of the hearing, the appellant's counsel emphasized the appellant's cooperation in making restitution. He also contended that the appellant should receive diversion because it had been granted to a similarly situated defendant who had stolen from a union's pension or trust fund. According to counsel, the defendant in the other case made a ten-thousand-dollar contribution to the economic crime fund as part of her plea agreement, and the State recommended diversion. The appellant's attorney claimed that the only significant difference between the two cases was the appellant's indigency.

In denying the appellant's request for judicial diversion, the court said that it considered the statutory factors, the presentence report, and the memorandum in opposition to judicial diversion that was filed by the State. The court noted that the appellant's crime was not impulsive but "was a crafty way to take the money that belonged to the City of Maynardville." The trial court found that

-2-

the appellant's crimes were carried out over a period of time with lack of contrition. Although the court acknowledged the appellant's restitution and her admission in the presentence report that she was "in charge of all the money coming in and going out," it questioned whether the appellant had accepted full responsibility for her actions. The court concluded that there was "nothing special" in the record to warrant diversion.

## II. Analysis

The appellant contends that the trial court erroneously denied her request for judicial diversion. Specifically, the appellant asserts that the trial court "placed great weight on what it perceived to be the [a]ppellant's lack of remorse" and that it made no effort "to weigh the positive nature of the [a]ppellant's characteristics." In support of her argument, the appellant cites her restitution, good family relationships, thirty-one years of employment with the City of Maynardville, and asserts that she has no history of alcohol or drug use or criminal behavior. The appellant further argues that the denial of her application for judicial diversion violates equal protection and due process. She argues that her case is similar to that of the other defendant who paid ten thousand dollars to the economic crime fund and received diversion and that the trial court's denial of her application for diversion shows an "unjustified disparity in sentencing and an inequality of sentencing based upon wealth." The State argues that the trial court properly denied the appellant's request for diversion based on the circumstances of the offense and the appellant's failure to present the court with proof of her amenability to correction. The court noted that the appellant did not express remorse or accept full responsibility for her actions. The State does not address the appellant's disparity in sentencing argument.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See Tenn. Code Ann. § 40-35-313(a)(1)(B). It is within the trial court's discretion to grant or deny judicial diversion. See State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). As such, the trial court's decision will be overturned only if the court abused its discretion. Id. In other words, we will not interfere with the denial of judicial diversion if the record contains any substantial evidence to support the trial court's refusal to grant diversion. Id. Moreover, we observe that "judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under [Tennessee Code Annotated section] 40-15-105." State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

In determining whether to grant a defendant judicial diversion, the trial court must consider all of the following factors: (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the status of the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997). Additionally, the trial court should consider whether judicial diversion serves the ends of justice–that is whether it supports the interests of the public as well as those of the defendant. Id. The record must reflect that the trial court has taken all of the factors into consideration. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn.

Crim. App. 1998). As a consequence, "we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision." Id. Furthermore, "[t]he court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others." Id.

Initially, we note that the appellant has failed to include the guilty plea hearing transcript in the appellate record. The burden is upon the appellant to ensure that the record before this court conveys a fair, accurate, and complete account of what transpired in the court below with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); see also State v. Ballard, 855 S.W.2d 557, 560-61 (Tenn. 1993). In any event, based on the record before us, we conclude that the trial court properly denied the appellant's request for judicial diversion.

In reaching its decision to deny diversion, the trial court emphasized that the appellant's crimes were not impulsive or a "one event act" but were carried out over a period of time. The court acknowledged the appellant's restitution and her statement in the presentence report admitting that she was the city recorder and treasurer and that she was "in charge of all the money coming in and going out." However, the court was not convinced that the appellant had accepted full responsibility for her actions. The appellant did not testify and presented no witnesses on her behalf. The court noted that before it grants diversion, it wants to have "a good, comfortable feeling . . . [that it] will never have to deal with Ms. Gillenwater or whomever it is that's applying" again. Based on the record before it, the trial court concluded that the circumstances of the appellant's offenses, "long term artifice with lack of contrition," did not warrant diversion. We agree with the trial court. Notably absent from the record is any expression of remorse by the appellant or acceptance of responsibility for her actions.

The nature and circumstances of an offense alone may support a denial of judicial diversion. State v. Kyte, 874 S.W.2d 631, 634 (Tenn. Crim. App. 1993). Indeed, the commission of an offense in separate actions over a period of time indicates a sustained intent to violate the law on the part of the appellant. State v. Danielle L. Walker, No. E2000-00578-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 235, at *10-11 (Knoxville, Mar. 29, 2001) (affirming the trial court's denial of judicial diversion because the appellant cashier had stolen over $3,000 from employer in twenty-nine occasions over about three weeks). We agree with the trial court that the repetitious nature of the present offenses, indicating the appellant's sustained intent to violate the law, weighs heavily against the granting of judicial diversion.

Further, we observe that the appellant abused a position of trust. See State v. Grissom, 956 S.W.2d 514, 518 & n.5 (Tenn. Crim. App. 1997); see also Walker, No. E2000-00578-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 235, at *11; State v. Kavious L. Newsom, No. 02C01-9806-CR-00166, 1999 Tenn. Crim. App. LEXIS 798, at *12 (Jackson, Aug. 6, 1999). Her use of her position as city recorder to steal funds from the City of Maynardville undermines public confidence in government service and weighs against the granting of diversion. See State v. Betty R. Chumbley, No. M2006-01117-CCA-R3-CD, 2007 Tenn. Crim. App. LEXIS 478, at *11

(Nashville, June 20, 2007); State v. Charles Chesteen, No. E1999-00910-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 455, at *45 (Knoxville, June 8, 2000). Additionally, "other potential employers have a clear interest in knowing" about the appellant's present convictions. [1] State v. Patricia Bohnenstiehl, No. 03C01-9801-CC-00035, 1999 Tenn. Crim. App. LEXIS 64, at *5 (Knoxville, Jan. 28, 1999). In sum, the public's interests are served by the denial of judicial diversion in this case.

With respect to the appellant's disparity in sentencing argument, we note that there is no proof in the record to support her allegation that she was treated differently based upon her indigency. Aside from the offenses charged and the plea agreement, there is no proof in the record concerning the circumstances of the other defendant's offenses or the other defendant's amenability to correction. The trial judge said that he had no specific recollection of the facts of the other case but explained that he has always been very judicious in applying the diversion statute. There is no evidence that the appellant's indigency played any role in the trial court's decision to deny her request for diversion.

To the contrary, the record reflects that the trial court's decision was based upon circumstances of the appellant's offenses. The appellant's use of her position to steal over twenty thousand dollars from the city of Maynardville in multiple transactions over a period of one year and eleven months demonstrates a sustained intent to violate the law and reflects her abuse of a position of trust. The trial court did not abuse its discretion when it denied her request for diversion.

### III. Conclusion

Accordingly, upon review, we affirm the trial court's judgment.

_____
NORMA McGEE OGLE, JUDGE

---

[1] The appellant asserts in her brief that because she is sixty-five years old she "will obviously never work outside the home again in her lifetime" and "will never again even be in a position of having the opportunity or temptation to commit official misconduct or theft." Although we acknowledge that the appellant's age may reduce the risk that she will be in a position to commit similar crimes in the future, we cannot conclude based solely on her age that the risk is eliminated.