IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2017

## STATE OF TENNESSEE v. PATRICK COSBY, AKA PATRICK A. BRITTON, AKA PATRICK T. BRITTON

**Appeal from the Criminal Court for Davidson County**
**No. 2015-B-1441    Monte Watkins, Judge**

_____

### No. M2017-00379-CCA-R3-CD

_____

Defendant, Patrick Cosby, plead guilty to attempted aggravated robbery with an agreed sentence of six years with the trial court to determine the manner of service. Following a sentencing hearing, the trial court ordered Defendant to serve his six-year sentence in confinement.  On appeal, Defendant argues that the trial court erred by denying alternative sentencing.  Upon reviewing the record and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Patrick Cosby.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Kristin Kyle-Castelli, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

_Background_

The facts of this case as set forth by the State at the guilty plea submission hearing are as follows:

In [Defendant's] matter, in Case No. 2015-B-1441, if this were to proceed to trial, the State's witnesses are available and testimony would be presented that on March 29th, 2013, at approximately 3:51 p.m.,

police were dispatched concerning a robbery to 1220 Gallatin Avenue in the parking lot of Walmart Neighborhood Market here in Davidson County. Officer Howard responded to the scene and spoke to the victim who reported that she was finished shopping at the Walmart when she was approached by two male black suspects who asked if they could return her cart for her. She gave the suspects her cart and she got back in her car.

The victim was backing out of the parking space when one suspect wearing blue surgical gloves knocked on her window. The suspect told her that she had dropped something, then entered her car through the victim's passenger door. The victim stated she knew something was wrong and began to punch the suspect who entered the car. As the victim was defending herself from the suspect wearing the blue surgical gloves, the other suspect entered her car from the driver's side door. As the victim was struggling with both suspects, the first suspect pulled a gun on the victim and stated that they just wanted her money.

During this time, the second suspect was attempting to gain control of the victim's vehicle, and the victim was repeatedly honking the horn to draw attention from surrounding customers. The vehicle does move out of the parking spot against the victim's control. As the victim honked the horn, finally both of the suspects fled the scene on foot without acquiring any of the victim's property.

The victim did sustain injuries, including a knot on her forehead and multiple bruises on her legs and her arms.

The victim left the Walmart and arrived at her sister in-law's house when she noticed a ripped fingertip of one of the blue surgical gloves in the passenger side floorboard of her car. Officer Howard responded to the scene and collected the blue surgical glove tip.

There was video of the incident from Walmart. And the fingertip of the glove was treated for DNA by the TBI lab and eventually the TBI report concluded that the defendant was the major contributor to the DNA sample on the surgical glove.

And based on those facts, the State recommends the disposition in Case No. 2015-B-1441.

The trial court also pointed out that Defendant also used the "aliases of Patrick Britton and Mac Cosby."

At the sentencing hearing, Donna Dunn, the victim, testified that she sustained multiple bruises and a concussion as a result of the attack on her by Defendant and his co-defendant. She could not work for one month and required psychological counseling. Ms. Dunn further testified:

> I can't get into the car without making sure the door is locked. I can be going 70 miles an hour down the interstate and still have to reach out and make sure the car doors are locked. My son, when he gets in the car, first thing he does is lock the door.

The victim testified that she thought she would die during the attack because she had seen the face of Defendant and his co-defendant, and they had a gun.

Defendant provided an allocution to the court. He apologized to the victim and said that "[i]t was the influence of drugs and alcohol and the wrong playmates." Defendant noted to the court that he was on probation for 11 months and 29 days for writing bad checks, and he "took a six-year sentencing hearing plea for attempted robbery[.]" Defendant then asked the court to place him on probation for the present offenses in order to "continue the process of responsibility, which is a $1,500 restitution to be paid, plus $50 a month toward probation." Defendant testified that he was working though Rondstadt Staffing from 10:00 p.m. until 6:00 a.m., and he had been sober for six months. He was also participating in a program through the Tennessee Prison Church Outreach Ministry that offered a "twelve-step program on site, educational referrals, and apprenticeship opportunities." Defendant further testified that the program was a "twelve-step Christian based program to assist with [his] hurts, [his] habits, and [his] hang-ups." He thought that participating in the program would help him to make better choices and receive additional support to help him live a more productive life for himself and his family. Defendant further said, "I also visit at Vanderbilt CCC Hospital at One Hundred Oaks frequently to keep up my levels. I'm a clear thinker now."

*Analysis*

Defendant contends that the trial court erred in ordering him to serve his sentence in confinement. The State responds that the trial court did not abuse its discretion in ordering Defendant to serve his sentence in confinement. We agree with the State.

The trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption

of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle*, our Supreme Court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278–79 (Tenn. 2012).

Under the 2005 amendments to the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b).

The trial court must state on the record the factors it considered and the reasons for the ordered sentence. *Id.* § 40-35-210(e); *Bise*, 380 S.W.3d at 706. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6)(A). However, no criminal defendant is automatically entitled to probation as a matter of law. *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). Instead, the defendant bears the burden of proving his or her

suitability for alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)).

When imposing a sentence of full confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(2), (4).

In his brief, Defendant in this case makes the following argument concerning alternative sentencing:

> The only statement that the trial court mentioned in determining the manner of service in this case was that, pursuant to T.C.A. § 40-35-103(1)(b), confinement is necessary to avoid depreciating the seriousness of [the] offense and confinement is particularly suited to provide an effective deterrence [sic] to others likely to commit similar offenses. [ ]. The Appellant asserted, in support of the Appellant's argument for an alternative sentence, that two (2) of the Appellant's three (3) felony convictions occurred in the 1990's [   ] when the Appellant was in his 20's and therefore much less mature than at present. The Appellant also suffers from a serious illness and his medical bills are expensive. The Appellant has been diagnosed with a contagious blood-born illness [ ]. The trial court failed to conduct an analysis of the factors pursuant to T.C.A. §§ 40-35-102, 103 and 104. Due to the length of time since his prior convictions and the fact that the Appellant suffers from a serious medical condition, the trial court should have released him the [sic] probation instead of putting his six-year sentence into effect.

As a Range II, multiple offender convicted of a Class C felony, Defendant was eligible for alternative sentencing but he was not considered a favorable candidate for alternative sentencing. *See id.* § 40-35-102(6). The trial court considered the facts of this case and the appropriate sentencing principles. The trial court denied Defendant's

request for an alternative sentence based upon the need to avoid depreciating the seriousness of the offense and the need for deterrence. *See id.* § 40-35-103(1)(B). Defendant has not demonstrated that the trial court abused its discretion by denying him an alternative sentence.

In this case, the trial court made the following findings concerning alternative sentencing:

> [Defendant] comes before the Court today saying that he's a changed man. He basically found God, something that I hear quite often, until they get back out in the free world and then they seem to lose God. I can't say that he's going to do that or not, but I hear that story all the time. What he did was something that this Court and probably no Court would condone in any way, shape[,] form or fashion. And this Court takes matters such as that very seriously. When you personally attack someone, terrorize them essentially, and then expect well, you know, I'll probably get probation for this. Doesn't quite work that way.
>
> I do believe, as the State pointed out and with 40-35-103(1)(b), that confinement is necessary to avoid depreciating the seriousness of [the] offense and confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses.

The record supports the trial court's findings. What would otherwise be only a scant reference to facts which would support the trial court's ruling becomes satisfactory by the implicit adoption of portions of the State's argument by the trial court. Specifically, the State summed up the facts contained in the record:

> In the past year and a half, since he was arrested on this charge, in between June 2015 and August 2015, he has, while on bond for this Attempted Aggravated Robbery, he was charged with forgery and several other charges on April 22, 2016. He's pled to those offenses, and that runs consecutive to this. So he's not actually quite on probation yet. He has six years to go prior to getting there. Those checks going to, that he had stolen, were from an elderly woman who has since passed.
>
> . . . And then on December 8th, he pled guilty on both of these charges [attempted aggravated robbery and forgery] in Division 5, and we're here before you on a sentencing hearing for the Attempted Aggravated Robbery.
>
> He can't handle, [Defendant] seems to have an incredibly difficult time with just being on bond with the only condition of do not pick up new

arrests, much less an alternative sentence of any shape, form or fashion. He has a tendency to prey on what he perceives to be weaker victims – an elderly woman, and Ms. Dunn herself is not a large person at all.

*     *     *

Based on the fact that he does have a very lengthy criminal history, which you will see reflected in the presentence report, and confinement appears to be necessary to protect society from [Defendant], the seriousness of the offense, attacking a woman in broad daylight with a weapon in the middle of a crowded parking lot requires a sentence to serve, Your Honor, in order not to depreciate the seriousness of this crime. Were they successful in taking anything from Ms. Dunn? No. But they took away her security, and that's not acceptable.

And finally, the State has tried less restrictive measures and they've not been successful.

Generally, to deny alternative sentencing solely on the basis of the seriousness of the offense, " 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting *State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). Additionally, to determine whether a trial court has properly found a need for deterrence, this court usually looks to *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000), in which our supreme court noted five factors to consider when denying probation on the basis of deterrence and held that a trial court may impose a sentence of incarceration based solely on a need for deterrence "when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *Id*. at 10-13. However, in *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014), the Tennessee Supreme Court determined that "the heightened standard of review [from *Trotter* and *Hooper*] that applies to cases in which the trial court denies probation based on only one of these factors is inapplicable" when the trial court "combined the need to avoid depreciating the seriousness of the offense with the need for deterrence and the nature and circumstances of the offense," which is what the trial court in this case did.

The facts noted above that were implicitly adopted by the trial court show that deterrence of Defendant justifies denial of an alternative sentence. In addition, the record shows that Defendant and his co-defendant attacked the victim at gun point in broad daylight in a parking lot as she was leaving a store in order to take her money and

vehicle. Defendant and his co-defendant would have succeeded had it not been for the victim fighting back and alerting others in the parking lot to what was happening. The victim suffered injuries that included a knot on her forehead and multiple bruises on her legs and her arms. At the sentencing hearing, the victim testified that she had a concussion, could not work for one month, and she required psychological counseling. The victim further testified that she thought she would die during the attack because she had seen the faces of Defendant and his co-defendant. This also supports a denial of alternative sentencing.

Defendant also argues that the trial court should have considered that two of his three prior felonies occurred in the 1990's and that he suffers from a serious illness resulting in expensive medical bills. However, the trial court was not required to consider these factors as the court determined that confinement was necessary to avoid depreciating the seriousness of the offense, the need for deterrence, and the circumstances of the offense. A trial court may deny alternative sentencing if it finds that any one of the factors found at T.C.A. § 40-35-103 apply. *State v. Christopher Allen*, No. W2016-00505-CCA-R3-CD, 2017 WL 764552, at *4 (Tenn. Crim. App. Feb. 24, 2017); *State John Anthony Garrett*, No. E2012-01898-CCA-R3-CD, 2013 WL 5373156, at *4 (Tenn. Crim. App. Sept. 23, 2013). Accordingly, the trial court did not abuse its discretion in ordering Defendant to serve his sentence in confinement.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE