FILED

02/27/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 17, 2019

**STATE OF TENNESSEE v. KENNETH GUTHRIE**

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2016-CR-158   David D. Wolfe, Judge**

_____

**No. M2017-02441-CCA-R3-CD**

_____

Defendant, Kenneth Guthrie, entered a best interest plea to attempted rape in exchange for a three-year sentence with the manner of service of the sentence to be determined by the trial court at a sentencing hearing.  After the hearing, the trial court sentenced Defendant to serve six months day-for-day with the balance of the sentence to be served on probation.  Defendant appeals his sentence, arguing that the trial court improperly denied a sentence of full probation.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Olin Baker, Charlotte, Tennessee, for the appellant, Kenneth Ray Guthrie.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Ray Crouch, District Attorney General; and Sarah W. Wojnarowski, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A presentment issued by a Dickson County Grand Jury on April 18, 2016, charged Defendant with the rape of the victim on January 30, 2016, at her home.  On September 18, 2017, Defendant entered a nolo contendere plea to one count of attempted rape in exchange for a sentence of "3 years with manner of service to be determined at [a] sentencing hearing."

At the sentencing hearing, Deputy Mark Bausell of the Dickson County Sheriff's Department testified that he was the "on-call criminal investigator" when the victim filed a police report about a week after the incident. Despite the timing of the report, Deputy Bausell asked the victim to "go ahead and proceed to the Horizon Medical Center Emergency Room, just for an examination." Deputy Bausell went to the hospital where he met with the victim and her family members. The physical examination revealed no injuries to the victim. The victim told Deputy Bausell that she had laundered the clothing she was wearing on the day of the incident. A blanket from the victim's home was eventually sent for forensic analysis but no DNA was recovered from the item.

Deputy Mark Bausell later took a statement from the victim at her residence on South Street in Vanleer. After speaking with the victim, another officer made contact with Defendant to inform him that he needed to come to the office for an interview. Deputy Bausell later "notified [Defendant] that [the victim] had made the allegation against him of a sexual assault." Defendant initially denied the allegations and denied that he had been inside the victim's house. The following day, Defendant contacted Deputy Bausell several times in order to try to schedule a meeting but remained "adamant that . . . no kind of assault had occurred." At first, Defendant admitted that he had "gone over and dropped off . . . two used tires" for the victim's son with whom he worked. Defendant maintained that he did not enter the victim's home. Deputy Bausell recalled that Defendant told this version of the story at least two times.

During a subsequent telephone call, Defendant changed his story and admitted that "things didn't happen the way they appeared." When Deputy Bausell asked Defendant to clarify, Defendant admitted that he went to the victim's residence to deliver the tires as he had stated previously. However, Defendant then claimed that the victim "approached him and tried to initiate sexual contact." Deputy Bausell continued:

> If I remember right, I think [Defendant] might have even said, that she had tried to take his pants down or something to that effect, and that she laid down on the couch, took her own pants off, and yes, he did engage in sexual intercourse with this lady, but that, within seconds, he realized this is wrong, and he got up and ran out the door.

The victim, who was 70 years old and retired, testified at the sentencing hearing. She explained that she would "like to see [Defendant] go into the jail for a[]while" for what he had done. She explained that she was alone in her house on the day of the incident and that she did not have a phone in her home.

According to the presentence report, Defendant did not have any prior convictions and was categorized as "low-risk" for reoffending. Defendant's version of the incident appears in the report as follows:

On or about January 30, 2016, I - - [Defendant] went to [the victim's] home looking for her son about some tires he purchased. [The victim] made sexual advances towards me, and she was wanting to have sex. I started to have sex with [the victim], then I decided I did not want to. I imagine she got mad. About a week later, she called the police and said I had raped her. [The victim] made these allegations because I would not have sex with her. I entered a best interest plea, because of my advanced age, other than that, I would, I would have [gone] to trial. I'm 68 years old.

John McGranahan of the Board of Probation and Parole testified that Defendant was an appropriate candidate for probation, noting that Defendant was retired from a full-time job. The assessment completed for the presentence reported indicated that Defendant was considered low-risk to reoffend on the basis of Defendant's "prior record, criminal record, [and] criminal history." Because Defendant had no criminal record, he was considered low risk.

Anite Faye Guthrie, Defendant's wife of 46 years, testified at the sentencing hearing. At the time of the hearing, the couple's three children were 46, 43, and 40. She explained that they had several grandchildren. In her words, it would "devastate" their family if Defendant were incarcerated because Defendant was active around the house as well as with his family. She explained that Defendant was retired from the County Highway Department and had also worked as an over-the-road truck driver. Mrs. Guthrie acknowledged that Defendant explained the circumstances of the offense to her prior to the hearing.

Kevin Miner, the pastor at Defendant's church, testified at the hearing. After Defendant had decided to enter the "no-contest" plea, Defendant met with Mr. Miner to make sure "that the church was okay with him contin[uing] attending there." Mr. Miner explained that "nobody in the church really had any concern" about Defendant's continued involvement in the church. Mr. Miner acknowledged that the church, out of caution, prevented Defendant from being in charge of events and having unsupervised contact with minors because of his placement on the sex offender registry.

Kenneth Garden testified that he had known Defendant for "30-plus" years and that the allegations were "totally out of character" for Defendant. He was surprised to hear that Defendant later claimed that he had consensual sex with the victim.

After hearing argument, the trial court credited the testimony of the victim because "her version of events has never, never swayed, never changed" while Defendant's version changed several times during the course of the investigation. Despite the

discrepancies in the victim's version versus Defendant's version, the trial court noted that whether the act was consensual was rendered "moot" by Defendant's guilty plea. The trial court considered the presentence report, principles of sentencing, argument as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, and the testimony at the sentencing hearing.

The trial court considered various enhancement and mitigating factors. The trial court rejected Defendant's proposed mitigating factor that he "acted under strong provocation" because the trial court "completely reject[ed Defendant's] explanation" of the events. The trial court agreed that it was unlikely Defendant had a sustained intent to violate the law and that Defendant had a stable history of work and of model citizenship. The trial court also rejected Defendant's proposed mitigating factor that the criminal conduct neither caused nor threatened serious bodily injury purely based on the circumstances of the offense and the nature of the charge. The trial court did not view Defendant's age as a mitigating factor and did not apply Defendant's involvement within his church as a mitigating factor. The trial court found enhancement factor (4) and (7) applied based on the victim's age and a finding that the offense was committed to gratify Defendant's desire for pleasure or excitement.

As far as sentencing alternatives, the trial court noted the ability to craft a three-year sentence that was entirely probated or a period of jail time followed by a term of probation. In the trial court's opinion, Defendant should "serve six months in the county jail, on a day-for-day basis" and, at the end of that period, Defendant's sentence "will be suspended to probation." The trial court ordered Defendant to register as a sex offender and be placed on Community Supervision for life. The trial court also prohibited Defendant from having contact with the victim or her immediate family.

The trial court denied Defendant's request to remain on bail pending appeal so as to avoid depreciating the seriousness of the offense, commenting that Defendant could "seek an order from the appellate court to stay the execution of a sentence pending appeal."[1] Defendant was ordered to report November 27, 2017, at 8:00 a.m. to begin serving his sentence. Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the trial court erred in refusing to grant a sentence entirely on probation. Defendant insists that he was "statutorily entitled to probation and a suspended sentence of confinement as an alternative method of sentencing." The State insists that the trial court properly sentenced Defendant to serve a sentence of split confinement.

---

[1] Defendant did not file any such motion in this Court.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The same standard of review applies to a trial court's decision regarding "probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *see also State v. King*, 432 S.W.3d 316, 325 (Tenn. 2014) (applying the same standard to judicial diversion). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Tennessee Code Annotated section 40-35-102(3)(C) provides that "[p]unishment shall be imposed to prevent crime and promote respect for the law by . . . [e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants[.]" Tennessee Code Annotated section 40-35-104(c)(9) authorizes a "sentence to a community based alternative to incarceration . . . ." Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed," and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" T.C.A. § 40-35-103(5). On the other hand, sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). Moreover, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure

necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). Although "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants," the defendant bears the burden of "establishing suitability" for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). A defendant who is sentenced as an especially mitigated or standard offender and who has committed a Class C, D, or E felony should be "considered as a favorable candidate for alternative sentencing options" if certain conditions are met. T.C.A. § 40-35-102(5), (6)(A). The guidelines regarding favorable candidates are advisory. T.C.A. § 40-35-102(6)(D).

Defendant is not, as he insists, "statutorily entitled to probation." Rather, he is statutorily eligible for probation, which remains entirely in the discretion of the trial court. The trial court herein sentenced Defendant to serve six months day-for-day prior to release on probation.[2] The trial court relied on subsection (B) of Tennessee Code Annotated section 40-35-103 in noting that the decision was made "due to the nature [of the offense] . . . that [a fully probated sentence] would in fact depreciate the seriousness of the offense, and would not serve as a deterrent to anyone else." The trial court described the "attempted rape of a 70-year-old lady" who was alone in her home as "a very serious offense." The trial court also pointed out the victim's unwavering account of the incident and Defendant's varying accounts of the events, which initially included an outright denial that he was even inside the victim's home. The court can consider Defendant's truthfulness in determining whether to grant probation. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983).

Generally, to deny alternative sentencing solely on the basis of the seriousness of the offense, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring a sentence other than confinement." *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting *State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). Additionally, in *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000), our supreme court noted five factors to consider when denying probation on the basis of deterrence and held that a trial court

_____

[2] We acknowledge that in *Ray v. Madison County, Tennessee*, 536 S.W.3d 824, 838-39 (Tenn. 2017), the supreme court determined that under Tennessee Code Annotated section 41-2-111(b), trial courts can fix a percentage that defendants must serve in actual confinement before becoming eligible to participate in a work program and earn work credits but cannot preclude defendants from earning good time credits under the statute.

may impose a sentence of incarceration based solely on a need for deterrence "when the record contains evidence which would enable a reasonable person to conclude that (1) deterrence is needed in the community, jurisdiction, or state; and (2) the defendant's incarceration may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *Id.* at 10-13. However, in *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014), the Tennessee Supreme Court determined that "the heightened standard of review [from *Trotter* and *Hooper*] that applies to cases in which the trial court denies probation based on only one of these factors is inapplicable" when the trial court "combined the need to avoid depreciating the seriousness of the offense with the need for deterrence and the nature and circumstances of the offense," which is what the trial court did in this case. In our view, the trial court acted consistently with the purposes and principles of the Sentencing Act and did not abuse its discretion in denying a sentence composed entirely of probation.

*Conclusion*

Based on the foregoing, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE