IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 22, 2024

## STATE OF TENNESSEE v. TOMMY GENE COUCH, SR.

**Appeal from the Criminal Court for Hamilton County**
No. 313021    Boyd M. Patterson, Judge

———

### No. E2023-01812-CCA-R3-CD

———

The Defendant, Tommy Gene Couch, Sr., appeals from his guilty-pled conviction for aggravated assault.  Pursuant to the terms of the plea agreement, the trial court was to determine the length and manner of service of the Defendant's sentence.  Subsequently, the trial court denied the Defendant's request for alternative sentencing and imposed a three-year sentence in incarceration.  On appeal, the Defendant challenges the denial of alternative sentencing as an abuse of the trial court's discretion.  After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which JILL BARTEE AYERS and TOM GREENHOLTZ, JJ., joined.

Lisa Z. Bowman, Chattanooga, Tennessee, for the appellant, Tommy Gene Couch, Sr.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Coty G. Wamp, District Attorney General; and AnCharlene D. Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

In June 2019, Veronica Pitts, the victim, stayed with the Defendant at his residence to help care for him while the Defendant's son, the victim's boyfriend at the time, was incarcerated.  On the morning of June 21, 2019, the victim awoke to find the Defendant holding a gun against her head.  The Defendant shot her in the head and then shot her three

more times as she fled his residence.  The victim survived.  A Hamilton County grand jury indicted the Defendant and charged him with attempted first degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony.  *See* Tenn. Code Ann. §§ 39-12-101; -13-102, -202; -17-1324.  On September 1, 2023, the Defendant entered a negotiated guilty plea to the offense of aggravated assault, with the length and manner of service of sentence to be determined by the trial court at a later sentencing hearing.

During the factual stipulation at the plea hearing, the State recited that the victim was scheduled to leave the Defendant's residence that morning but awoke to the Defendant's shooting her in the head.  The victim fled the scene and suffered injury to her head, back, and "other parts of her body."  While being treated at the hospital, the projectiles lodged in the victim's body could not be recovered due to safety concerns.  When he was interviewed by law enforcement, the Defendant initially denied having any knowledge of why the victim fled the residence.  However, he later admitted to shooting the victim and stated that he did so because she had been in a relationship with his son.  The Defendant explained that his son was incarcerated at the time as the result of a domestic violence offense involving the victim and that the victim had threatened to have her relatives assault his son while he was in custody.  At the conclusion of the plea hearing, the trial court accepted the Defendant's guilty plea as to the aggravated assault charge, dismissed the remaining charges, and referred the Defendant to the state probation office for a presentence investigation and report.

On November 17, 2023, the trial court held a sentencing hearing.  At the outset of the hearing, the parties agreed that the Defendant was a Range I, standard offender.  The State then introduced the presentence investigation report ("PSI") as an exhibit to the hearing and called Kristina Creekmore, who had prepared the PSI, to testify as to its contents and the details of her interview with the Defendant.  Ms. Creekmore testified that the Defendant had cooperated during the interview, appeared to be providing truthful answers, and signed a release for her to receive and review his medical records.  During the interview, the Defendant relayed to Ms. Creekmore that he suffered from post-traumatic stress disorder ("PTSD") as a result of his combat experience in the Vietnam War, had several injuries sustained in two past vehicular accidents that still caused him pain, and had used crack cocaine for the first time approximately one week prior to his interview with her.  His medical records confirmed the PTSD diagnosis as well as the injuries sustained in multiple traffic accidents, but the records also revealed that, on one occasion, he had been transported to the hospital by ambulance after mixing multiple medications, including opiates and benzodiazepine, with an excessive amount of alcohol.

On that occasion, Narcan was administered to the Defendant while en route to the hospital to revive him.

The victim testified that, for approximately three days in June 2019, she was staying with the Defendant in his home to care for him while his son, her then-boyfriend of twelve years, was incarcerated. She stated that she informed the Defendant on the night of June 20, 2019, that she intended to leave, and he agreed to give her a ride to Chattanooga the following morning. On June 21, 2019, the victim awoke to the Defendant holding a gun with its barrel against her temple. Before the victim could move, the Defendant fired the gun, striking her in the head but not incapacitating her. The victim attempted to escape, all the while yelling and asking the Defendant what was wrong. However, the Defendant continued to fire the gun at her and struck her three more times as she fled the residence. The victim was able to run to a neighbor's house for help, and after the neighbor called 911, law enforcement and other emergency responders arrived. The victim was taken to the hospital and treated for her injuries, but three of the four projectiles could not safely be removed from her body. The Defendant was arrested, and the victim gave a statement to law enforcement while she was in the hospital.

After the Defendant elected not to put on any proof, the trial court invited the parties to make argument regarding the length of sentence and manner of service imposed. The Defendant requested that the minimum sentence of three years be imposed and that he be placed on unsupervised probation. The Defendant's argument largely focused on his lack of criminal history and the unlikelihood that a sentence involving confinement would provide effective deterrence or serve to protect society. The State requested that the maximum sentence of six years be imposed and that the Defendant be ordered to serve the sentence in incarceration. The State argued that confinement was necessary to avoid depreciating the seriousness of the offense based upon the circumstances in this case.

After allowing both parties multiple opportunities to be heard on their respective positions, the trial court made findings of fact based upon the PSI and the testimony presented in the hearing. Specifically, the trial court found that the Defendant had received "relatively low and moderate risk" scores in the Strong-R assessment. The trial court next concluded that no enhancement factors applied to the degree needed to increase the term from the minimum sentence. However, it found that confinement was necessary to avoid depreciating the seriousness of the offense based upon the "very serious expression of violence" in this case and that "the [D]efendant kept shooting [the victim]" during her attempt to escape after his initial shot. In so ruling, the trial court expressly mentioned its consideration of "the principles [of sentencing], the risk factors, Strong-R [assessment], the PSI, the testimony of the victim, [and] the description in the PSI of the [D]efendant's

background." The trial court then sentenced the Defendant to serve three years in the Tennessee Department of Correction.

The Defendant filed a timely notice of appeal.

## II.    ANALYSIS

On appeal, the Defendant contends that the trial court erred in denying him alternative sentencing based upon an alleged failure to consider the Defendant's PTSD diagnosis and overall physical health, as well as for not specifically addressing its consideration of all sentencing principles on the record. The Defendant further asserts that he was a favorable candidate for probation, that the trial court did not consider the required sentencing statistics for similar offenses, and that the trial court misinterpreted the Strong-R assessment. The State responds that the trial court properly acted within its broad discretion by imposing confinement based on the record. We agree with the State.

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to "questions related to probation or any other alternative sentence"). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). *See id.* at 344. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Sentencing Reform Act was enacted in order "to promote justice" and "assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions." Tenn. Code Ann. § 40-35-102. In determining the proper sentence, the trial court must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts ("AOC") as to Tennessee sentencing practices for similar offenses; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. Tenn. Code Ann. § 40-35-210(b).

To facilitate meaningful appellate review, the trial court must state on the record the sentencing principles it considered and the reasons for the sentence imposed. Tenn. Code Ann. § 40-35-210(e)(1)(B); *Bise*, 380 S.W.3d at 705. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A sentence should be upheld if the trial court provided "enough to satisfy the appellate court that [it] has considered the parties' arguments and [that it] has a reasoned basis for exercising [its] . . . legal decision making." *Id*. (quoting *Rita v. United States*, 551 U.S. 338, 356-57 (2007)).

A trial court should consider the following when determining a defendant's suitability for alternative sentencing:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). The advisory sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should be* considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (emphasis added). However, no longer is any defendant entitled to a presumption of being a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347. "A court shall consider, but is not bound by, the advisory sentencing guideline in" section 40-35-102(6). Tenn. Code Ann. § 40-35-102(6)(D).

Relative specifically to probation, a defendant who receives a sentence of ten years or less, except for certain specified offenses, is eligible for probation. Tenn. Code Ann. § 40-35-303(a). While the trial court is required to automatically consider probation as a sentencing option, *see* Tennessee Code Annotated section 40-35-303(b), no criminal defendant is automatically entitled to probation as a matter of law, *see State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). "[T]he burden of establishing suitability for probation rests with the defendant[,]" including the defendant's showing that probation will serve the ends of justice and the best interests of the public and the defendant. *Carter*, 254 S.W.3d at 347 (quoting Tenn. Code Ann. § 40-35-303(b), *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). Additionally, among the factors applicable to probation consideration are: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

Here, the Defendant was convicted of aggravated assault, a Class C felony. *See* Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii), (e)(1)(A)(ii). As a Range I offender, the appropriate sentencing range was three to six years. *Id.* § 40-35-112(a)(3). The trial court imposed the minimum three-year sentence. Because the length of the sentence is within range and not challenged on appeal, we need only determine if the trial court abused its discretion by ordering the sentence to be served in confinement.

The trial court expressly stated that it considered confinement necessary in this case based on the need to avoid depreciating the seriousness of the offense.

> If the seriousness of the offense forms the basis for the denial of alternative sentencing, Tennessee courts have held that 'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree,' and the nature

of the offense must outweigh all factors favoring a sentence other than confinement.

*State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting *State v. Grissom*, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). Additionally, when the sole reason for denying probation is the seriousness of the offense, "the circumstances of the offense as particularly committed in the case under consideration must demonstrate that the defendant committed the offense in some manner more egregious than is contemplated simply by the elements of the offense." *State v. Trent*, 533 S.W.3d 282, 292-93 (Tenn. 2017).

In this case, while the victim was sleeping, the Defendant held a gun to her head, fired it, and continued to fire it with enough accuracy to strike her multiple times as she attempted to escape. This court has previously held that similar circumstances, many of which were less egregious than these, qualified under the considerations listed in *Trotter* to support confinement. *See State v. Cosby*, No. M2017-00379-CCA-R3-CD, 2018 WL 3487219, at *5 (Tenn. Crim. App. July 19, 2018) (affirming a sentence of confinement for a defendant who attacked and held the victim at gunpoint in concert with a codefendant); *State v. Henderson*, No. M2013-00603-CCA-R3-CD, 2013 WL 6706200, at *3 (Tenn. Crim. App. Dec. 18, 2013) (affirming a sentence of confinement for a defendant who placed a gun to the victim's head and threatened to kill her); *see also State v. Wilson*, No. E2015-01446-CCA-R3-CD, 2016 WL 1633031, at *5 (Tenn. Crim. App. Apr. 22, 2016) (affirming the denial of alternative sentencing for an aggravated assault based on a defendant's extreme violence in repeatedly striking the non-threatening victim who was attempting to diffuse the situation). As such, the record supports the trial court's decision.

We reiterate, "the burden of establishing suitability for probation rests with the defendant[,]" including the defendant's showing that probation will serve the ends of justice and the best interests of the public and the defendant. *Carter*, 254 S.W.3d at 347 (quoting Tenn. Code Ann. § 40-35-303(b), *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). "In other words, even though probation must be automatically considered as a sentencing option for eligible defendants, the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303, Sentencing Comm'n Cmts. The trial court was not persuaded by the Defendant's argument in favor of alternative sentencing, and evidence was introduced during the hearing that he was in fact not a favorable candidate for probation. Ms. Creekmore's testimony and the PSI established that the Defendant had required Narcan to be revived on one occasion following the commission of this offense and had decided to use crack cocaine for the first time while awaiting sentencing in this case. The Defendant was eligible for probation as a standard offender convicted of a Class C felony, but he was not entitled to be presumed a favorable

candidate after introduction of evidence to the contrary. *See* Tenn. Code Ann. § 40-35-102(6)(A); *Carter*, 254 S.W.3d at 347.

The Defendant further alleges that the trial court failed to consider his medical diagnoses and misinterpreted the Strong-R assessment when it denied him alternative sentencing. However, the trial court actively asked questions during the sentencing hearing regarding the PSI and specifically requested Ms. Creekmore to direct the court's attention to the diagnosis of PTSD in the report. At the conclusion of the proof, the trial court invited the parties to make argument regarding their positions on sentencing, and the Defendant's PTSD and injuries were mentioned numerous times during the Defendant's argument in favor of alternative sentencing. While making its ruling, the trial court specifically referenced its consideration of both the PSI as a whole and the specific "description in the PSI of the Defendant's background." As such, the record contradicts the Defendant's contention that the trial court did not consider his PTSD and physical health in denying alternative sentencing. Relatedly, the trial court's characterization of the Defendant's scores in the Strong-R assessment as low and moderate was not erroneous; when read in context, it is clear from the record that the trial court was referring to individual scores in specific needs categories wherein the Defendant had received both low and moderate ratings, rather than the overall risk score, which was low. We conclude that the trial court conducted a proper analysis based on the record.

The Defendant also contends that ordering the sentence to be served in confinement was erroneous because the trial court did not articulate on the record its consideration of the sentencing principles found in Tennessee Code Annotated section 40-35-103(2) through (7). Likewise, the Defendant asserts that the trial court failed to articulate its consideration of the AOC statistics regarding similar offenses as required by Tennessee Code Annotated section 40-35-210(6). However, as noted above, a trial court's failure to adequately articulate its reasoning is not enough to overcome the presumption of reasonableness afforded to the sentence imposed, nor is there any requirement that such reasoning be "particularly lengthy or detailed." *Bise*, 380 S.W.3d at 705-06. The trial court adequately explained here that confinement was necessary to avoid depreciating the seriousness of the offense. *See* Tenn. Code Ann. § 40-35-103(1)(B). Moreover, the trial court additionally stated it had considered "the principles [of sentencing]." The trial court's lack of specific articulation that it considered each specific principle or each item of statutorily mandated evidence, which it is required to consider in every case where it makes a sentencing determination, is not enough to overcome the presumption of reasonableness afforded to the sentence imposed in this instance. Accordingly, we are satisfied that the trial court properly exercised its discretion in sentencing the Defendant to confinement based upon the reasoning articulated on the record.

### III. CONCLUSION

In consideration of the foregoing, we affirm the judgment of the trial court.

_____
KYLE A. HIXSON, JUDGE